## DOW *v.* HUMBERT ET AL.

1. In a suit by a judgment creditor of the town of Waldwick against the supervisors of said town for refusing to place upon the tax-list thereof the amount of his judgments as provided by the statutes of Wisconsin, it appeared in evidence, that, since the institution of the suit, the defendants had so placed the only judgment proved in the case. *Held,* that the plaintiff was entitled to recover only nominal damages.

2. Where a judgment is described in the declaration as having been rendered in the Circuit Court for the *District* of Wisconsin, a judgment of the *Circuit* Court for the *Eastern* District of Wisconsin is not admissible in evidence under the plea of *nul tiel record.*

Error to the Circuit Court of the United States for the Western District of Wisconsin.

This was an action of tort brought against the defendants below, who were supervisors of the town of Waldwick, Wis., for neglect of duty in refusing to place upon the tax-list, as required by the statutes of Wisconsin, the amount of two judgments recovered by the plaintiff below against said town. Two questions arose in the case : —

*First,* Whether one of the judgments was properly described in the declaration.

*Secondly,* Whether the plaintiff was entitled only to recover nominal damages.

To the ruling of the court below on both these points the plaintiff below excepted.

The particulars of the case appear fully in the opinion of the court.

Mr. *M. H. Carpenter* and Mr. *E. Mariner* for the plaintiff.

No counsel appeared for the defendants.

Mr. Justice Miller delivered the opinion of the court.

The defendants are sued by plaintiff for a failure to perform their duty as supervisors of the town of Waldwick, in the county of Iowa, Wis., in refusing to place upon the tax-list the amount of the judgments recovered by him against that town. By the statutes of Wisconsin, no execution can issue against towns on judgments rendered against them; but the amounts of such judgments are to be placed, by order of the supervisors, on the next tax-list for the annual assessment and collection of taxes; and the amount so levied and collected is to be paid to the judgment creditor, and to no other purpose.

The declaration avers due notice served on the supervisors of these judgments, and demands that they be so placed on the tax-list. The first judgment is described in the declaration as rendered in the Circuit Court for the District of Wisconsin, on

the 27th October, 1870, for $708.90; and the notice to the supervisors, set out in the declaration, uses the same language. The other judgment is described as rendered in the Circuit Court for the Western District of Wisconsin, June 10, 1871, for the sum of $1,531.56.

The answer of the defendants denies that there is any such judgment as that first described : and, as to the second judgment, they say, that, after it was rendered, the town of Waldwick was divided, and a part of it organized into the new town of Moscow; that thirty-seven per cent of the judgment was collectible from that town; and that it was not the duty of the defendants to levy the whole judgment on the property of the citizens of Waldwick.

On these issues the parties went to trial before a jury. In support of the issue as to the existence of the first judgment, plaintiffs introduced a copy of a record of a judgment between the same parties for the same amount, and of the same date as that described in the declaration, in the Circuit Court for the *Eastern* District of Wisconsin; to which defendants objected, because it varied from the judgment described in the declaration, and in the notice given to defendants to place it on the tax-list. The court sustained the objection, and this ruling is the ground of the first assignment of errors. The argument of counsel on this branch of the case rests mainly on the ground of the sufficiency of the notice to the supervisors. But the question before that is, whether such a judgment was admissible under the pleadings as they stood. There had been for many years a Circuit Court for the District of Wisconsin. Shortly before this judgment was rendered the district was divided into two districts, and the Circuit Courts were by the express language of the act of Congress called the Circuit Court for the Eastern District and the Circuit Court for the Western District respectively. There was no such court in existence at the date of the judgment offered as the Circuit Court for the *District of Wisconsin*, and the defendants were justified in pleading *nul tiel record* to a declaration founded on a judgment of that date in that court; and, on this issue as it stood when the record of a judgment in the Circuit Court for the Eastern District was offered, it did not

prove a judgment in the Circuit Court for the District of Wisconsin.

If plaintiff had asked leave to amend his declaration by inserting the word *eastern* before district in his first count, in describing his judgment, it would no doubt have been granted; and the question would then have arisen as to the sufficiency of notice to the supervisors, the notice containing the same mistake : but, on the plea of *nul tiel record* of a judgment of the Circuit Court for the District of Wisconsin, it is clear a judgment of the Circuit Court for the *Eastern* District of Wisconsin is not evidence of such a judgment.

Plaintiff having introduced a record of his judgment for $1,531.56 in the *western* district of Wisconsin, and notice and demand as to that to the supervisors, the defendants were permitted, as the court said, solely in mitigation of damages, to offer the record of the division of the township, and resolutions of the board, adopted after this suit was brought, directing the town-clerk to place this latter judgment, with its interest, on the tax-list in November, 1872; to which exceptions were taken, and this constitutes the ground of the second and third assignments of error. They will be considered in connection with the fourth and last assignment.

This being all the testimony, plaintiff requested the court to charge the jury that the plaintiff was entitled to recover of the defendants the amount of both these judgments, with interest from their date; and, this being refused, he asked the same instruction as to the second judgment, which was refused. Exceptions were taken to both these refusals, and to the following language in the charge which the court did deliver :—

"The jury are instructed upon the whole evidence in the case that the plaintiff is entitled to recover nominal damages from the defendants by reason of their failure to direct the levy of the tax in question. The plaintiff is not entitled to recover any more, because he has not shown that he has suffered any injury from the neglect or omission of the defendants to cause the clerk to put the judgment on the next tax-roll of the town."

The whole case turns upon the soundness of this latter instruction, representing as it does the converse of that which the

plaintiff asked, and which was refused; and the single question presented is, whether these officers, by the mere failure to place on the tax-list, when it was their duty to do so, the judgment recovered by plaintiff against the town, became thereby personally liable to plaintiff for the whole amount of said judgment, without producing any other evidence of loss or damage growing out of such failure.

It is not easy to see on what principle of justice the plaintiff can recover from defendants more than he has been injured by their misconduct.

If it were an action of *trespass*, there is much authority for saying that plaintiff would be limited to actual and compensatory damages, unless the act were accompanied with malice or other aggravating circumstances. How much more reasonable, that for a failure to perform an act of official duty, through mistake of what that duty is, that plaintiff should be limited in his recovery to his actual loss, injury, or damage!

Indeed, where such is the almost universal rule for measuring damages before a jury, there must be some special reason for a departure from it.

In the case before us, it must be presumed that the taxable property of Waldwick township remains to-day as it was when the levy should have been made; that a levy this year would as surely produce the money as if it had been made last year. The debt is not lost. The right to recover remains. The property liable to its satisfaction, and the means of subjecting it to that use, are still open to plaintiff. The only loss, then, is the delay, unless it may be the cost and expense of the unavailing effort to have the debt levied on the tax of the previous year; and this, if proved, could have been recovered under the instructions. For mere delay in paying a moneyed demand, the law has long recognized interest as the only damages to be recovered; and this interest is by law added to the assessment when placed on the tax-list. If A., by the highest class of express contract, say a promissory note or bond, promise to pay B. ten thousand dollars on a day fixed, and fail to do it, B. can only recover interest for the delay, though he may have depended on that money to save his homestead from sacrifice, and has lost it by reason of that failure. So a man buying real

estate may improve, adorn, and have it grow in his hand to a value ten times what he gave for it; but, if he loses all this by a failure of his title, he can only recover of the warrantor the sum which he gave for the land. These are apparent hardships. But wisdom and experience have shown that the danger of holding persons liable for these remote consequences of the violation of their contracts is far more serious in its consequences than occasional failure of full compensation by the application of the rule of interest for delay, and of the purchase-money in a suit on a warranty of title to lands.

"Damages," says Mr. Greenleaf, "are given as a compensation, recompense, or satisfaction to the plaintiff for any injury actually received by him from the defendant. They should be precisely commensurate with the injury, neither more nor less, and this whether it be to his person or estate." 2 Green. Ev., sect. 253. And without entering into the question whether this rule excludes what are called exemplary damages, which are not claimed here, we think this definition of the principle on which damages are awarded in actions at law a sound one.

The expense and cost of the vain effort to have the judgment placed on the tax-list; the loss of the debt, if it had been lost; any impairment of the efficiency of the tax levy, if such there had been; in short, any conceivable actual damage, — the court would have allowed if proved. But plaintiff, resting solely on his proposition that defendants by failing to make the levy had become his debtors for the amount of his judgment, asked for that, and would accept no less.

Counsel for plaintiff relies mainly on the class of decisions in which sheriffs have been held liable for the entire judgment for failing to perform their duty when an execution has been placed in their hands. The decisions on this subject are not harmonious; for while it has been generally held that on a failure to arrest the defendant on a *capias*, or levy an execution on his property, or to allow him to escape when held a prisoner, the amount of the debt is the presumptive measure of damages, it has been held in many courts that this may be rebutted or the damages reduced by showing that the prisoner has been rearrested, or that there is sufficient property subject to levy to satisfy the debt, or other matter, showing that plaintiff has not

sustained damages to the amount of the judgment. This whole subject is fully discussed and the authorities collated in Sedg. on Dam. 506–525; *Richardson* v. *Spence*, 6 Ohio, 13. But, without going into this disputed question, we are of opinion that those cases do not furnish the rule for the class to which this belongs.

The sheriff, under the law of England, was an officer of great dignity and power. He was also custodian of the jail in which all prisoners, whether for crime or for debt, were kept. He had authority in all cases when it was necessary to call out the whole power of the country to assist him in the performance of his duty. The principle of the sheriff's liability here asserted originated undoubtedly in cases of suit for an escape. Imprisonment of the debtor was then the chief if not the only mode of enforcing satisfaction of a judgment for money. It was a very simple, a very speedy, and a very effectual mode. The debtor being arrested on a *capias*, which was his first notice of the action, was held a prisoner, unless he could give bail, until the action was tried. If he gave bail, and judgment went against him, his bail must pay the debt, or he could be rearrested on a *capias ad satisfaciendum*; and, if he had given no bail, he was holden under this second writ until the money was paid. To permit him to escape was in effect to lose the debt; for his body had been taken in satisfaction of the judgment. Inas much as the object of keeping the defendant in prison was to compel the payment of the debt through his desire to be released, the plaintiff was entitled to have him in custody every hour until the debt was paid.

It is also to be considered, that, for every day's service in keeping the prisoner, the sheriff was entitled to compensation by law at the hands of the creditor. *Williams* v. *Mostyn*, 4 M. & W. 153; *Williams* v. *Griffith*, 3 Exch. 584; *Wylie* v. *Bird*, 4 Q. B. 566; 6 id. 468.

With the means in the hands of the sheriff for safe-keeping and rearrest, with the escape of the debtor almost equivalent to a loss of the debt, and with compensation paid him by plaintiff for his service, it is not surprising, that, when he negligently or intentionally permitted an escape, he should be held liable for the whole debt.

How very different the duties of the class of officers to which defendants belong, and the circumstances under which their duties are performed! There is no profit in the office itself. It is undertaken mainly from a sense of public duty; and, if there be any compensation at all, it is altogether disproportionate to the responsibility and trouble assumed. They are in no sense the agents of creditors, and receive no compensation from holders of judgments or other claims against the town for the collection and payment of their debts. There are no prisons under their control, no prisoners committed to their custody, no *posse comitatus* to be brought to their aid; but without reward, and without special process of a court to back them, they are expected to levy taxes on the reluctant community at whose hands they hold office. To hold that these humble but necessary public duties can only be undertaken at the hazard of personal liability for every judgment which they fail to levy and collect, whether through mistake, ignorance, inadvertence, or accident, as a sheriff is for an escape, without any proof that the judgment creditor has lost his debt, or that its value is in any manner impaired, is a doctrine too harsh to be enforced in any court where imprisonment for debt has been abolished.

The case of *The King on the Prosecution of Parbury* v. *The Bank of England*, Doug. 524, is cited as sustaining the plaintiff in error. It was an application for a *mandamus* to compel the governor and company of the Bank of England to transfer stock of the bank. The writ was denied on several grounds; among which, as a suggestion, Lord Mansfield said that " where an action will lie for complete satisfaction (as in that case), equivalent to a specific relief, and the right of the party applying is not clear, the court will not interpose the extraordinary remedy of a *mandamus*." He then shows that the *right* of the party in that case to have the transfer made was not clear. As this was not an action against the officers of the bank for damages, the remark that there was other relief is only incidental, and the point as to the measure of damages was not in issue.

A note to the principal case shows that an action of assumpsit was afterwards brought and compromised before final judgment. But on the whole case there is no discussion of the measure of

damages; and that question remained undecided. The case of *Clark* v. *Miller*, 54 N. Y. 528, decided very recently in the commission of appeals, appears to be more in point. It was an action against the supervisor of the town of Southport, Chemung County, for refusing to present to the board of supervisors of the county plaintiff's claim for damages as reassessed for laying out a road through his land.

The court, without much discussion of the principle, holds the defendant liable for the full amount of the reassessment, on the authority of *The Commercial Bank of Buffalo* v. *Kortright*, 22 Wend. 348.

That case was decided in the Court of Errors in 1839. It was an action for refusing to make a transfer of stock of the bank. The chancellor (Walworth) was of opinion that the extent of the damages was the depreciation of the stock, and not its full value; and of this opinion were four senators.

In the case of *The People* v. *The Supervisors of Richmond*, 28 N. Y. 112, also before the court in 20 id. 252, the relator had sued out a writ of *mandamus* requiring the supervisors to audit his claim for damages assessed for land taken as a highway. The supervisors made a return to the writ; which proving false, the Supreme Court rendered a judgment against them personally for the claim of $200, and for $84 damages for delay. The Court of Appeals said, 'that as the return of the supervisors was false, and the relator has been kept out of the money to which he was entitled from the town, the supervisors may be properly made liable in damages to the extent of the interest upon the $200, — to wit, $84; and they affirm the judgment as to the $84, and reverse it as to the $200, for which they order a peremptory writ of *mandamus*.

This answer accords precisely with our views; and we think it of equal authority with *Clark* v. *Miller*, above cited in 54 N. Y.

We are of opinion, that, in the absence of any proof of actual damage in this case, the defendants were liable to nominal damages and to costs, and no more.

If we are correct in this, the evidence of the division of the township, and that the supervisors had actually placed the judgment of plaintiff in the tax-list of the next year, were

properly received in mitigation; at all events, did him no harm, as he had proved no actual loss or injury.

*The judgment of the Circuit Court is affirmed.*

MR. JUSTICE CLIFFORD dissenting.

I dissent from the opinion and judgment of the Circuit Court in this case, because the instruction given by the Circuit Court to the jury was erroneous.   Plaintiffs were entitled at least to the actual damages sustained by them in view of the whole evidence.   Unless the plaintiffs in such a case may recover something more than nominal damages, the debt becomes valueless, as the same conduct by the supervisors may be repeated indefinitely, and the rule necessarily leads to practical repudiation.