BRANCH *v.* DAVIS and others.

(*Circuit Court, M. D. Alabama.* November Term, 1886.)

1. BOND OF PROBATE JUDGE — LIABILITY ON — FAILURE TO MAKE TAX-ROLL — CODE ALA. §§ 435, 689.

The duty imposed by Code Ala. § 435 upon the probate judge to make and deliver a tax-roll to the tax collector, upon the levy of a tax by the county commissioners, is a duty incident to his office as judge, and not as commissioner, and for neglect of it an action can be maintained upon his bond by a judgment creditor of the county, to pay whose judgment the tax was levied, under section 689 of the Code, providing that a bond of a probate judge may be sued by any one sustaining an injury by the failure of the judge to perform certain specified duties, or "any other official duty."

2. SAME—MEASURE OF DAMAGES—JUDGMENT CREDITOR OF COUNTY.

 The measure of liability of a probate judge, or his sureties, to a judgment creditor of the county, for his failure to make and deliver the tax-roll to the tax collector, after a special levy to pay the judgment, is the actual loss and trouble caused to plaintiff by the delay and the failure of the proper officer to collect the levy, but not the amount of the judgment, nor the amount which the levy would have yielded, if collected, although the levy has become *functus* by the delay, unless it is shown that, in consequence of the delay, it has become impossible to collect the judgment.

3. TAXATION—COLLECTION AFTER THE YEAR.

 If the probate judge fails to make and deliver a tax-roll to the tax collector upon a levy being made by the county commissioners, and the tax-year passes without his having done so, the power to collect the tax by the ordinary statutory mode is gone.

Heard upon the Trial of the Cause. Jury, by agreement of parties, was discharged.

*D. S. Troy* and *A. T. Landon*, for plaintiff.

*Walter L. Bragg* and *Wm. H. Smith*, for defendants.

BRUCE, J. This is an action brought by plaintiff against the defendant David L. Davis and the sureties on his official bond for damages for an alleged failure on the part of Davis to perform a duty required of him by law as the probate judge of Randolph county, state of Alabama. On the ninth day of December, 1876, the plaintiff recovered a judgment in this court against the county of Randolph, Alabama, for the sum of $3,691.44, and costs; and thereafter, on the tenth day of August, 1878, at the instance of plaintiff, a writ of *mandamus* was issued from this court to the commissioner's court of said county requiring that court to levy, assess, and cause to be collected, a tax upon the taxable property of the county to pay said judgment; and thereafter, on the twenty-first day of October, the court of county commissioners of said county, in obedience to said writ, did levy and assess a tax of three-fourths of 1 per cent. upon the taxable property of said county, and made return thereof to this court. By section 435 of the Code of Alabama it is made the duty of the probate judge to "make a book containing, in concise form, the amount of taxes due by each tax-payer, which book shall show the amount of tax on real estate and personal property separately,  *  *  * which book must be turned over by the judge to the tax collector on or before the day when the tax becomes due.  *  *  *"

This book, so made and delivered to the tax collector, is the warrant of authority to the collector for the collection of the taxes. There is really no controversy as to the facts in the case. It is in proof, and is admitted, that the probate judge did not make or deliver the book described in section 435 of the Code to the tax collector; that the tax levy was never collected; and that plaintiff's judgment remains wholly unpaid.

The questions which now arise are: *First,* is there any liability at all on the official bond of the probate judge? And, *second,* if so, what is the measure of damages which may be recovered?

*First,* then, as to liability. It is fundamental that injury to a party which is the direct and proximate result of a breach of duty on the part

of another carries with it liability to compensation for such injury; and this is surely not less so where persons occupy places of official trust and responsibility. In these cases statutes are passed which have for their purpose and object the security of persons to whom injury may come by reason of the neglect and refusal of officers to perform the duties required of them by law.

By section 689 of the Code of Alabama it is provided: "All bonds given by judges of probate may be sued by any one sustaining an injury by reason of any neglect or omission of such officer" to perform certain duties therein specified; and the concluding words of the section are, "or by the failure of such judge to perform any other official duty." The words of the law would seem to be a full answer to the question of liability.

It is said that the omission of the duty complained of is not a duty required of the defendant Davis when acting as a probate judge, but one which he could only perform while acting as a commissioner and chairman of the board of equalization of taxes; but this is not the correct reading of the law.

The case of *Ex parte Rowland*, 104 U. S. 613, is cited, where the court say: "The court of county commissioners, while called a 'court,' is in fact the board of officers through whom the affairs of the county are managed. The duties of this board * * * are administrative, not judicial."

The statute, however, as we have seen, imposes the duty, the failure to perform which is complained of here, upon the probate judge, *eo nomine*, and not upon him as a commissioner or member of the commissioners' court. And the fact that duties of this character are administrative, and not judicial, is the ground upon which such officers may be required, by proper proceeding, to perform those duties, and, failing, may be held responsible to parties injured in damages resulting to them for such failure.

Another suggestion is that the law in reference to the official bond of a probate judge was not intended to cover such a failure of duty as is here complained of, and that, while the probate judge might himself be held liable, his sureties on his bond cannot be so held liable. The case of *Jones v. Biggs*, 1 Jones, (N. C.) 364, is cited in support of that view. In that case the court bases its judgment on the statute of North Carolina which required guardians to renew their bonds every three years, and provides: "It shall be the duty of the clerks of the several county courts to issue an *ex officio* summons against each guardian who shall fail," etc. The court holds that this duty imposed upon the clerk was not one of the duties appertaining to the office of clerk, as to keep safely the records, issue writs, etc. In the case at bar, however, the duty is specifically enjoined by the statute, and is in its nature and effect so much like the duty of issuing writs in the ordinary course of the business of the office that the case is not within the rule of the case cited.

The question, however, which gives rise to the most serious contention is, conceding the liability of the probate judge and the sureties on his

official bond, what is the measure of such damages? It is claimed, on the one hand, that it can be no more than nominal damages. On the other, that it is the amount of the plaintiff's judgment in this court; or, if not, the amount that the levy of October 21st would have yielded if it had been collected according to law and the right of this plaintiff.

It is not shown that the plaintiff's debt, now in judgment, has been lost, or that the taxable property of the county is less in value now than it was when the judgment was rendered. On that point the presumption is that the land, and even the personal property in the county liable to taxation, is still there; but the plaintiff's debt has not been paid, either in whole or in part, and the question arises whether the failure of the probate judge to comply with the law as before stated renders him and his bondsmen liable for the judgment, or whether the debt, interest, and costs are to be taken as an element of damages in such a case.

Authorities are cited to show that, "in absence of averment and proof of actual injury, there can be only nominal damages recovered." *Marcum* v. *Burgess*, 67 Ala. 556. This was an action on a sheriff's bond for damages for failure to return an execution according to its mandate.

In the case of *Dow* v. *Humbert*, 91 U. S. 294, which was a suit by a judgment creditor of the town of Waldwick against the supervisors of the town for refusing to place upon the tax-list thereof the amount of his judgments as provided by the statutes of Wisconsin, it was held that the plaintiff was entitled to recover only nominal damages. In that case the point was squarely made by the plaintiff that the measure of his damages was the amount of his judgment against the town; but the court held otherwise, and in its opinion announced the principle upon which damages in such cases should be awarded. This case is decisive of the question that the measure of damages in such cases is not the amount of the debt of the plaintiff, but that, in the absence of any proof of actual damage, the plaintiff is entitled to nominal damages only, and costs; and it would seem to follow from the reasoning of the court that in no case of the kind is the plaintiff entitled to any judgment that would operate a credit on the debt or judgment, to pay which the levy had been made. The theory is that interest is the equivalent for delay in the collection of a debt, and, unless the debt is lost, either in whole or in part, the recovery in a suit against the delinquent officers is not for the debt, or any part thereof, but only for the injury actually sustained by the plaintiff.

It is claimed, however, that the case at bar is distinguishable from the case of *Dow* v. *Humbert*, and there are points of difference. In the latter case there was no levy, as in this case. There the delinquent officers failed to place the judgments on the tax-list of the town, and it does not appear that in that case there had been any *mandamus* proceeding, as in this case. It is not clear, however, that the *mandamus* proceeding in the case at bar, in obedience to which it is alleged the court of county commissioners made the levy of the tax to pay the judgment in question, either increased or diminished the statutory liability of the probate judge upon his bond.

Considerable stress was laid in argument upon the idea that the record showed that a false return had been made in answer to the peremptory writ of *mandamus* from this court, in this: that the return showed that a suit had been instituted upon the bond of the collector of taxes of the county to make him liable for a failure to perform his duty in the collection of this levy, while in fact the members of the court of county commissioners knew that he never had incurred any liability in the matter, for that the book or tax-roll which was his authority to collect the tax had never been made and delivered to him by the probate judge, as required by law, and therefore the duty to collect had never been devolved upon him. But, whatever bad faith, if any, may be chargeable against the members of the court of county commissioners in the return which they made to the writ of *mandamus*, that cannot be considered as an element of liability in this suit, which is a suit against the probate judge, not as a member of the court of county commissioners, but against him as probate judge, and the sureties upon his official bond.

In the case of *Dow* v. *Humbert* the suit was not, as in the case at bar, upon an official bond, but against the delinquent supervisors, and certainly the rule of liability involving sureties would not be held more strictly than in a case against the official alone.

But it is claimed that, although the plaintiff may not be entitled to measure his damages in this case by the amount of his judgment, still he is entitled to the fruit of the levy which was actually made, and which yielded nothing to him by reason of the failure of the probate judge to perform his duty as charged. A question has been made in the argument as to whether, in legal contemplation, the damage which the plaintiff claims was the direct and proximate result of the failure of the probate judge to perform his duty as charged,—for that *non constat* the judge might have made and delivered the book to the tax collector, and he been unable to collect the tax; but it is not deemed necessary to discuss this question of cause and effect in this case.

It is said the levy is *functus*, and the plaintiff has lost the fruit of that levy, and therefore the amount that the levy would have yielded, if collected, is the measure of damages to which the plaintiff is entitled here. Argument is made to show that the levy is not dead or lost, but that it remains as a charge upon the taxable property of the county; citing *Perry Co.* v. *Selma M. & M. R. Co.*, 65 Ala. 401; *Winter* v. *City Council of Montgomery*, Sup. Ct. Ala. MS.

These cases show that a levy of tax, made regularly by the proper authority, remains a charge upon the property, subject to the levy, which a court of equity will recognize; but, after the tax-year passes, where, then, is the authority for the probate judge to make and deliver the tax-warrant to the collector, and where is the authority of the collector to enforce the collection of such levy? The collection of taxes is matter of strict law, and governed by the statute; and, if special taxes to pay a judgment are not collected in the same manner as are other taxes, then the question arises, under what law can the tax collector proceed to collect such tax?

In the case of *Winter* v. *City Council of Montgomery*, cited *supra*, which was a bill in equity to enforce the collection of delinquent taxes, the court say: "The remedy given by statute is gone with the lapse of years because of the failure of the proper officer to enforce it at the authorized time;" so that the levy of October 21st, whatever right it may give the plaintiff, the ordinary means of collecting it is gone.

The plaintiff insists that the levy made by the court of county commissioners has been impaired, and that this case is not, therefore, like the case of *Dow* v. *Humbert*, cited *supra;* but, if it has been impaired, it is only by the fact that it has not been collected, and may not now be collected in the ordinary way; and in *Dow* v. *Humbert*, at page 299, the court say:

"The expense and cost of the vain effort to have the judgment placed on the tax-list; the loss of the debt, if it had been lost; any impairment of the efficiency of the tax levy, if such there had been; in short, any conceivable actual damage,—the court would have allowed, if proved. But plaintiff, resting solely on his proposition that defendants by failing to make the levy had become his debtors for the amount of his judgment, asked for that, and would accept no less."

Plaintiff in the case at bar presents this view of the subject: that, if not entitled to the amount of the judgment, he is entitled to the amount the levy would have yielded had it been collected, for that the levy has been impaired. It has happened in this instance that the levy of three-fourths of 1 per cent. upon the taxable property of the county as returned for that year will not yield the full amount of this judgment, and the plaintiff claims judgment for the amount the levy, if collected, would have yielded, on the ground that that levy has been impaired. We have seen that the right to have the levy collected in the ordinary way is gone; but is that what the supreme court in the case of *Dow* v. *Humbert*, cited *supra*, means by an "impairment" of the efficiency of the levy? It may not be entirely clear what the court meant by the words just quoted, but from the connection in which they are found it is clear that the court meant any impairment of the efficiency of the levy, the direct result of which would be actual injury to the plaintiff in the ultimate collection of his debt,—for instance, the loss of property available for taxation in any future effort to levy and collect taxes to pay the debt,—but certainly not such loss as merely results in the postponement of the day of the payment of the plaintiff's judgment. Doubtless, the failure of the probate judge to do his duty caused delay in the collection of the plaintiff's debt, and repeated delinquencies of this kind on the part of officers whose duty it is to provide for the payment of judgments of this character would tend very much to lessen the present value of the debt, and, by postponing the day of payment, might almost render it valueless; but the supreme court in the case we are considering has in effect said that interest on the judgment is an answer to that objection.

The distinction insisted upon by plaintiff cannot be maintained. If, in a suit for damages against officers of a municipality for a failure on their part to place certain judgments on the tax-list as required by law,

the measure of damages is limited to the actual loss to the plaintiff, how can it be that in a suit against a probate judge, under the law of Alabama, for a failure to make and deliver the tax-roll to the tax collector, as he is required to do, the measure of damages can be other or greater than in the former case? Whether the delinquency complained of was in the first or subsequent steps required by law of the various officers charged with duties in the matter of the assessment and collection of taxes to pay judgments, it is not important to inquire, except so far as it may be shown that such delinquency results in actual loss to the plaintiff; nor is it the presumption in such cases that the debt is lost, and the burden thrown upon the defendants to show the contrary. The presumption is that the taxable property of the municipality remains liable to taxation for the payment of the judgment of the plaintiff, and that, if the levy already made cannot be collected, a new levy may be made, and its collection enforced by a proper proceeding.

A question is made in reference to the effect of certain legislation of the state since the judgment in this case was obtained, in reference to what are known as the "Strangulated Counties," of which Randolph county is one; but it is not deemed necessary to enter upon an examination of that legislation, for, whatever it may have been, even if it embarrassed the plaintiff in the enforcement of his remedy in this case, and whether constitutional or otherwise, it could not affect the question of the liability of the probate judge of Randolph county upon his official bond in this suit.

The principles announced in the case of *Dow* v. *Humbert*, cited *supra*, are conclusive of the present case, and go fully to the proposition that actions of this character against officials for a failure on their part to perform the duties required of them by law are not to be made the means of collecting the debt of the plaintiff, but the recovery is to be compensation to him for the injury and loss actually suffered by him, and resulting from the failure of the defendant to perform the duty required of him by law. In that case, however, the court says: "The expense and cost of the vain effort to have the judgment placed on the tax-list," and "any conceivable actual damage, the court would have allowed, if proved."

In the case of *Newark Sav. Inst.* v. *Panhorst*, 7 Biss. 100, the court, DRUMMOND, J., commenting on the case of *Dow* v. *Humbert*, says: "It has been decided, substantially, that the officers of such corporations are not liable for more than nominal damages if they refuse to perform the duties which the law imposes upon them;" and then goes on to say: "We will give the plaintiff some compensation for the trouble to which it has been put in consequence of the non-performance of a duty by the defendants, in the employment of counsel, and for the labor and expense, without defining it in any precise form or language;" and names $585 as the sum for which judgment is given.

It is manifest that the courts in these cases feel that mere nominal damages and costs furnish a scant vindication of the law, and this case illustrates that view of the subject. Here the plaintiff had to resort to a suit in *mandamus* to compel the levy of a tax to pay his judgment; and when

the members of the commissioners' court, under the coercive power of this court, made the levy which they did make, the probate judge, a member of that court, failed to deliver the tax-roll to the tax collector of the county so that the levy was not collected, and practically became valueless to the plaintiff. Such conduct on the part of an official suggests that there should be some spur and incentive to the performance of legal duty beyond a judgment of one cent and costs; and following the case last cited, *supra,* (the parties having agreed in open court, the question being one of law, and the jury having been discharged, that the court should determine the matter, and the entry be made as upon a verdict of a jury,) the court finds for the plaintiff in the sum of $500 as compensation for trouble and attorneys' fees in this cause, and costs of this suit.