BROWN, J., dissenting.
Action heard upon demurrer to the complaint. It was originally brought by J. H. Hudson, "on behalf of himself and all other bondsmen of A. W. Aman who will come in and aid in the prosecution." Later, by an order made at February Term, 1908, Levett Warren, J. H. Turlington and C. H. Fisher were made parties plaintiff, and A. W. Aman was made a party defendant. V. J. McArthur, A. T. Herring and George Highsmith composed the Board of Commissioners of Sampson County, and George E. Butler was the county attorney. A. W. Aman, the other defendant, was the sheriff of the county and acting treasurer. The plaintiffs were the sureties on his official bond. They alleged that Aman, while sheriff, embezzled the county funds, and each of the plaintiffs was compelled to pay $418.50, except J. H. Turlington, who paid $94 additional. The particular breaches of duty by the defendant commissioners, for which the plaintiffs seek in this action to recover from them, as individuals, the several sums paid by them as sureties on the sheriff's bond, are thus stated in the complaint:
"(a) The plaintiffs are informed and believe, and upon such information and belief aver, that the defendant commissioners negligently failed to require of said A. W. Aman, sheriff and treasurer as aforesaid, the settlements required by statute in February, May and September, for the years A.D. 1905 and 1906, respectively. *Page 428 
"(b) The plaintiffs are informed and believe, and upon such information and belief aver, that the said defendants, V. J. McArthur, A. T. Herring and George Highsmith, the board of county commissioners as aforesaid of Sampson County, were required to demand of the said sheriff and treasurer, A. W. Aman, the first Monday in December, 1904, before they allowed him to reenter the duties of his said office, his receipts in full for the taxes which he had collected and which he should have collected for Sampson County for previous years, as set out in Revisal, sec. 2812, and that they failed to do so; but on the contrary, allowed said A. W. Aman, sheriff and treasurer as aforesaid, to reenter upon the duties of his said office and to renew his said bond before he had produced before the said board the receipt in full for taxes which he had or should have collected.
"(c) That said A. W. Aman, sheriff and treasurer as aforesaid, failed to collect and settle the taxes of said county, placed in his hands to collect, for the year 1905, or produce his receipts for the same before he received his tax list from the said board to collect the taxes for the year 1906, and the said defendant board permitted said (447) Aman to receive and collect the taxes for the year 1906 for said county before the said A. W. Aman, sheriff and treasurer as aforesaid, had settled the taxes for the previous year, or had produced his receipts for the same, as provided by section 5241 of the Revisal of 1905 of North Carolina; and the said board of commissioners and the defendants V. J. McArthur, A. T. Herring and George Highsmith, as members thereof, failed and neglected to appoint a tax collector as provided for by said section 5241 of the Revisal of 1905 of North Carolina, and permitted said A. W. Aman to receive the tax list for said Sampson County for the year 1906 and to collect the taxes for said county for that year without requiring him to perform his duties as aforesaid, as required by law, and failed and neglected to appoint a tax collector, as set out above.
"7. That some time prior to the first Monday in September, 1906, one O. F. Herring, one of the sureties on said Aman's bond with these plaintiffs, warned the defendants V. J. McArthur, A. T. Herring and George Highsmith, the board of county commissioners, through their chairman, V. J. McArthur, not to turn over the tax books for Sampson County for the year 1906 to said A. W. Aman until a full and complete settlement was had by said commissioners with said defendant A. W. Aman for all arrears of taxes; that he had heard that A. W. Aman was financially embarrassed and behind in his accounts with the county and that as one of the bondsmen, he objected to the tax books of said county for the year 1906 being turned over to said A. W. Aman before a full settlement was had. *Page 429 
"8. That, notwithstanding said warning, the defendant commissioners negligently failed to make a proper or full settlement with said A. W. Aman on the first Monday in September, 1906, and carelessly and negligently, and contrary to their duty as required of them by law, as the plaintiffs are informed and believe, and upon such information and belief aver, turned over the tax books of Sampson County for the year 1906 to said A. W. Aman, sheriff and treasurer as aforesaid, and allowed him to collect said taxes without requiring of him a full settlement for the taxes of the previous year and when he was at that time behind in his accounts with the said county, as the plaintiffs are informed and believe. Plaintiffs allege, upon information and belief, that at the said meeting of the board of commissioners of the defendant V. J. McArthur, A. T. Herring and George Highsmith, the first Monday in September, 1906, to settle with the said A. W. Aman, sheriff and treasurer as aforesaid, the said defendant commissioners ascertained the amounts that said A. W. Aman was behind and was due the county, and did not require him to exhibit the money received from the collection (448) of taxes, but looked at the tax books in his hands then uncollected, and received those uncollected tax receipts then in said Aman's hands in settlement of the balances said Aman was then due the county as sheriff and treasurer as aforesaid, and left those said uncollected tax receipts for previous years in the hands of said A. W. Aman, sheriff and treasurer as aforesaid, and upon that kind of alleged settlement, which the plaintiffs say was negligent and careless, turned over to said Aman for collection the tax books for Sampson County for the next succeeding year, to wit, the year 1906."
The defendant commissioners and Butler demurred to the complaint upon various grounds, and the demurrer was sustained as to Butler, from which there was no appeal. It was overruled as to the commissioners, and they appealed.
Passing the question as to the misjoinder of the parties plaintiff, and the joinder of defendant Aman as a party defendant — the plaintiffs having each a separate, and not a joint, cause of action against the defendant commissioners, if they have any cause of action at all, and the cause of action against Aman being distinct from and arising from totally different facts from that alleged against the defendant commissioners — we proceed to consider if the complaint states facts sufficient to constitute a cause of action in favor of any one, or all, of the plaintiffs against the defendant commissioners. *Page 430 
The argument addressed to us in support of his Honor's ruling is rested upon sections 2812, 5241 and 5250, Revisal of 1905; that these sections impose mandatory duties upon the boards of county commissioners, and that defendants violated these duties in the manner of making the settlement with Aman, the sheriff, and these violations of duty directly caused the loss to plaintiffs, to recover which they have brought this action against the defendants.
The liability of the board of commissioners for a failure to comply in good faith with sections 2812 and 2813, Rev., is declared by section 2814, Rev., to be "for all loss sustained in the collection of taxes, on motion to be made by the solicitor of the district." The evident purpose of the section is to further protect and safeguard the public revenue and to further assure its honest collection and application by subjecting the commissioners to liability if they fail to require the proper bonds from the collecting officer; and this is further enforced and (449) somewhat extended by section 313, Rev., which provides that, "Every commissioner who approves an official bond, which he knows to be, or which by reasonable diligence he could have discovered to have been, insufficient in the penal sum, or in the security thereof, shall be liable as if he were a surety thereto, and may be sued accordingly by any person having a cause of action on said bond." The bond of the defaulting sheriff in the present case was not deficient either in the penal sum or in the security thereof; the plaintiffs as his sureties have made good his default, and paid the money to the proper authorities. The obligation of the bond has been met and the bond has been discharged. This action is not on the bond.
If any one of the defendants permitted the defendant Aman, on the first Monday of December, 1902, or on the first Monday of December, 1904, these being the first Mondays in December next after his election and he being a former sheriff, to give his bonds or reenter upon the duties of his office until he had produced before the board the receipt in full of every such officer for taxes which he had or should have collected, then such commissioner, under section 3590, Rev., was guilty of a misdemeanor and also liable to the penalty of $200 for each offense, "to be paid to any person who shall sue for the same." Bray v. Barnard, 109 N.C. 44; Lee v.Dunn, 73 N.C. 595. If the defendants failed to require such receipts on the first Monday in December, 1904, the plaintiffs were not endamaged in the particulars alleged, for they only became sureties on the bond then given, and the default of their principal, for which they allege they were compelled to answer on that bond, occurred afterwards in his failure to honestly account for the taxes for the fiscal years 1905 and 1906. So that if the commissioners failed to observe the requirements of section 2812, Rev., such failure *Page 431 
did not injure plaintiffs in the manner alleged by them, though such failure might have subjected them to indictment and to an action for the penalty prescribed by the statute.
Coming now to the consideration of sections 5241 and 5250, Rev., and the particulars in which it is alleged these sections were violated by the defendant commissioners in their settlement 1 September, 1906, with Sheriff Aman, we quote the pertinent provisions of them. Section 5241 provides: "Provided, the sheriff or tax collector shall not collect the taxes for any year until he shall have settled in full with the State and county for the taxes of the previous year (if he was sheriff or tax collector), and gives the bond required by law; and if upon examination the commissioners are not satisfied with the solvency of the surety to said bonds, they may require new bonds to be given. Before receiving the tax duplicate he shall produce the receipts of the (450) State and county, if he was the sheriff or tax collector, for the previous year, to the clerk of the board of commissioners, and in the event the sheriff fails to produce the aforesaid receipts or give the required bond, the board of commissioners shall appoint a tax collector, who shall give bond," etc. And section 5250, Rev., provides: "Providedfurther, that it shall be unlawful for any sheriff or tax collector, in accounting with the board of county commissioners for either the State or county taxes, to exhibit or present in said county any money not actually derived from the collecting of taxes, and any such sheriff or tax collector so offending shall forfeit a penalty of $500, one-half of which shall belong to any person who shall due for the same, and the other half to the county in which the sheriff resides."
It is alleged as a fact, and the demurrer admits the fact, that the settlement by the county commissioners with Sheriff Aman in September, 1906, was not made in the manner directed by these two sections. It is contended that the statutes are mandatory, and the acts of the county commissioners were ministerial, leaving in them the exercise of no discretion, and that the delivery of the tax duplicates to the sheriff enabled him to embezzle the funds to the injury of the plaintiffs, and, therefore, the defendants are liable.
If we concede the mandatory character of the statutes, and the ministerial character of the acts to be done by the commissioners, involving the exercise of no discretion, we do not think the injury to plaintiffs complained of necessarily or by direct connection follows. In S.v. Harris, 46 Am. Rep., 169; 89 Ind. 363 (in which case the doctrine stated by Judge Cooley in Raynsford v. Phelps, 43 Mich. 342, is disapproved as not in harmony with the weight of authority and reason), the Supreme Court of Indiana says: "It is not enough in any case for a plaintiff, who seeks to recover for an injury caused by the negligence *Page 432 
of another, to show simply injury and negligence; he must also show that there was a breach of duty owing to him. This general rule applies with peculiar force to persons who sue for injuries caused by official misconduct. It is not every person who sustains an injury from the negligence of a public officer that can maintain an action on the officer's bond. In general, a public officer is liable only to the person to whom the particular duty is owing, and the ruling question in all cases of the kind is as to whether the plaintiff shares the breach of the particular duty owing to him. It is not sufficient to show a general public duty, or a duty to some other person directly interested." Judge
(451) Cooley says: "But the sheriff can only be liable to the person to whom the particular duty was owing — the party to whom he is bound by the duty of his office." In Shearm. and Red. on Negligence (3 Ed.), sec. 174, it is said: "It is a general rule that, whenever an action is brought for a breach of duty imposed by statute, the party bringing it must show that he has an interest in the performance of the duty, and that the duty was imposed for his benefit." In this connection the same learned writers, at section 166, observe: "In speaking of the liability of nonjudicial public officers to a civil action by private persons, it will be found convenient, if not indeed necessary, to a proper understanding of the decided cases, to make a distinction between those officers whose duties are of a general public nature and who act for the profit of the public at large, and that other class of officers who are appointed to act, not for the public in general, but for such individuals as may have occasion to employ them for a specific fee paid."
It is clear, at least, that the county commissioners belong to the first of the two classes — "officers whose duties are of a general public nature and who act for the profit of the public at large."
The above authorities state the doctrine upon which plaintiffs must depend to maintain this action as strongly in their favor as the decided cases and text-writers warrant; but even so stated, we do not think the action can be maintained against the defendant commissioners. The acts complained of were public acts, done by the commissioners in their corporate capacity. The clear purpose of these statutory requirements was to impose duties for the benefit and protection of the public revenue, to provide more vigilant measures for its safety for the public good and benefit. They prescribe public duties to be discharged by the commissioners. The protection of the plaintiffs, as sureties upon the sheriff's bond, is clearly not within the purview of the statutes; the taking of a bond with approved security was, itself, to further assure the public. To make good the default of the sheriff was the express obligation of the bond signed by the plaintiffs; it was the guarantee of his honesty and fidelity. By the statutes, to enforce promptness, *Page 433 
accuracy and completeness of settlements, penalties are imposed both upon the commissioners and the sheriff. The commissioners are made liable also to indictment. These liabilities are imposed by express statutes. The Legislature has not yet deemed it wise or proper to impose the additional liability upon the commissioners contended for by plaintiffs, and in the absence of express statutory enactment, or of some well-settled principle of law constraining us to so hold, we do not (452) think the commissioners are liable to the plaintiffs.
In addition we do not think the injury suffered by plaintiffs and the loss sustained by them was the necessary, direct or immediate result of the defendant's acts. They do not stand in the relation of cause and effect; the turning over the tax books was simply a condition, the injury was apost hoc, but not an ergo proper hoc. The direct and immediate and only cause of the loss sustained by plaintiffs was the dishonesty and embezzlement of the sheriff — their principal, whose honesty and fidelity was the express obligation of their undertaking. The defendant commissioners could have done all they did, and yet no injury to the plaintiffs resulted; they could have observed the statutes to their very letter, and the loss to the plaintiffs have been the same. The sheriff could have embezzled the county funds with or without a strict settlement. There is, therefore, no causal connection between the acts alleged and the loss sustained. In addition to the authorities cited, the following sustain the conclusion we have reached: 2 Abbott on Municipal Corporations, secs. 672 and 673; McConnell v. Dewey, 5 Neb. 385; School Dist. v. Burgess,2 Neb. 554; Mechem on Public Officers, secs. 598, 599; Press Brick Co. v.School Dist., 79 Mo. App. 665; Bassett v. Fish, 75 N.Y. 303; Heeney v.Sprague, 11 R. I., 456, 23 Am. Rep., 502; 1 Suth. on Dam., 56; NelsonCounty v. Northcate, 6 L.R.A., 230.
In its final analysis, to sustain the contentions of the plaintiffs would be to make the members of the board of county commissioners liable to the sureties on the official bonds of the sheriffs and other officers, whose performance of duty they are required by statute to supervise, if the commissioners fail to discharge their statutory duties in the manner prescribed by law, and this to be held regardless of whether a particular duty was owing to the particular person complaining, and whether there was any causal connection between the violation of the statute and the injury complained of. We cannot so hold. In our opinion, the demurrer filed by the defendant commissioners should have been sustained, and the order of his Honor overruling it is
Reversed.