SCHENCK, J., dissenting.
DEVIN, J., dissenting.
BARNHILL, J., dissenting.
The plaintiff brought this suit to recover damages for injury to his stock of goods and merchandise, alleged to have been caused by the negligence of the defendants.
In the complaint the plaintiff alleged, with respect to the injury and the cause thereof, that he was owner of a large store in the village of Hiddenite, in which he was engaged in the mercantile business, selling groceries, dry goods, notions, fruits, vegetables, and things of like kind, which store building was located near to the highway running through the village — the said highway being a part of the State Highway System; and that said store was fully stocked with goods and merchandise of the kind mentioned, recently bought for the fall trade. There were four doors fronting on the State Highway.
The defendants were employees of the State Highway and Public Works Commission, and were working upon the highway, sweeping the road, especially the shoulder of the road nearest to the plaintiff's store. It is complained that the dust and dirt and accumulation of filth swept up on and along the road were blown into the store as the truck or sweeper, with blower attached, passed the building, thereby doing plaintiff's stock of goods great damage, in so much that they could not be restored by cleaning to their original condition; and that the store required a general cleaning, and a great part of the stock had to be sold at a greatly reduced price because of the diminished value due to defendants' negligence and injury to the goods, and that plaintiff sustained damage in the sum of $1,200.
It is further alleged that the defendants failed to give any notice of the intended use of the said sweeper and blower past the premises so that the injury complained of might have been averted; and failed to observe the conditions of the store or notify the owner so that the injury *Page 785 
complained of might have been averted; and failed to observe the conditions of the store or notify the owner so that it might be closed, and that they might easily, by the exercise of proper care, have known that their acts in using the sweeper and blower past the premises, without such notice, would cause the injury complained of.
The defendants demurred to the complaint for that it failed to state that the acts of the defendants therein complained of were either corrupt or malicious. This demurrer was sustained; and, not appealing from said order, the plaintiff was permitted to amend the complaint, and did amend it, by charging that the acts were willfully, wantonly, negligently, maliciously, and heedlessly done.
Thereafter, the defendants answered separately, denying the material allegations of the complaint.
Upon the trial, the plaintiff testified substantially as follows:
That he owned and operated a mercantile business in Hiddenite on Highway No. 90; his store is located near the west side of the highway. It has four doors facing the street leading through Hiddenite — two as the main entrances of the store, and one to each of the stock rooms. There are windows in the building, and they were up at the time the sweeper and blower passed the store. Plaintiff had no notice whatever that the sweeper and blower was approaching his place until it was already there, and the dust, dirt and filth were blown into his store. It took several days to clean the store out. There was dirt and dust and filth on everything in the store. You could not see through the store at the time the dust was blowing through — you could not see the front door.
Plaintiff had no opportunity to close the doors or windows, which he would gladly have done if he had had any notice that the blower and sweeper was going to pass. He did not at any time refuse to close the doors and windows in an endeavor to protect his property, and did not tell anybody that they had more time than plaintiff had — plaintiff had none.
The first plaintiff knew that the blower and sweeper was approaching, he was sitting in his office directly in the back of the store, and the first thing he knew, he heard an awful racket and raised up, and did not know what it was. It looked more like a cyclone than anything else — he could not see the front of the store there was so much dust and filth in it. That was the first time he knew anything about it. Plaintiff ran to get the doors closed, but could not do so before the sweeper and blower passed. Plaintiff then gave an inventory of the damaged articles, and testified as to the damage.
On cross-examination, the plaintiff stated that he supposed Mr. Abernathy and Mr. Jones were using State equipment of the Highway Commission. They were preparing to give the road a bituminous treatment. *Page 786 
Plaintiff did not know how long afterwards they put the bituminous surface on, or hard surfaced it. The defendants were operating the sweeper and blower, Mr. Jones and Mr. Abernathy.
Plaintiff was corroborated in his evidence by Mr. Fincannon, an employee who was present at the time of the injury. There was no opportunity to close the doors or protect the stock of goods. They could have been protected if the doors had been closed and the windows shut.
The defendants offered no evidence, but upon conclusion of the plaintiff's evidence, demurred and made a motion to nonsuit under G.S.,1-183. The demurrer was sustained, and plaintiff appealed, assigning error.
In the court below the defendants did not challenge the sufficiency of the evidence to go to the jury or to support the allegation of negligence, except in one respect — that it did not show any willfulness, malice or corruption on the part of the defendants. It will be seen that at a former hearing, the demurrer to the complaint for that it did not charge that the acts of the defendants were done maliciously, was sustained; and instead of appealing therefrom, the plaintiff amended his complaint by so charging. That became the theory upon which the case was tried below, and upon which it was heard here. See appellees' brief, p. 2: "The case came on for trial and upon the conclusion of the plaintiff's evidence, the defendant moved for judgment of nonsuit, for that there was no evidence to sustain the allegation of `wilful, wrongful, wanton, and malicious' negligence. The Court sustained the motion of nonsuit and dismissed the action, and the plaintiff appealed to this Court."
A further reading of the brief shows that the defense was based entirely on a misconception of Wilkins and Ward v. Burton, 220 N.C. 13,16 S.E.2d 406, and the postulate that "it is there established that employees and agents of the State Highway and Public Works Commission cannot be held personally liable for negligence in the discharge of their governmental functions except upon allegation and proof of wantonness or corruption."
Prefacing our further discussion with the statement, which will further receive attention, that there is plenary evidence to sustain the allegation of negligence in any aspect of the case, we first pay attention to the theory advanced by the defendants themselves.
It is a rule of law that an officer charged with the performance of a governmental duty involving discretion cannot be held for mere negligence *Page 787 
with respect thereto, but, on the contrary, is not liable unless his act, or his failure to act, is corrupt or malicious. Hipp v. Ferrall,173 N.C. 167, 91 S.E. 831; Templeton v. Beard, 159 N.C. 63, 74 S.E. 735. The act or omission then, for all practical purposes, takes on the guise of a malicious tort. The immunity thus extended to officers in the performance of a public duty grows out of a public policy which is fully explained in the two cases cited. Hipp v. Ferrall, supra; Templeton v. Beard, supra, and cases cited. One reason for the existence of such a rule is that it would be difficult to find those who would accept public office or engage in the administration of public affairs if they were to be held personally liable for acts or omissions involved in the exercise of discretion and sound judgment which they had performed to the best of their ability, and without any malevolent intention toward anyone who might be affected thereby. However, in proper cases even public officers may be liable for misfeasance in the performance of their ministerial duties where injury has ensued. Whether such liability would extend to omissions, as well as to acts of commission, in the absence of imperative legal duty, we need not now determine. Hipp v. Ferrall, 173 N.C. 167, 91 S.E. 831; Hudson v.McArthur, 152 N.C. 445, 67 S.E. 995; Hathaway v. Hinton, 46 N.C. 243;Rowley v. Cedar Rapids, 203 Iowa 1245, 212 N.W. 158, 53 A.L.R., 375.
The suggested immunity has never been extended to a mere employee of a governmental agency upon this principle, although employed upon public works, since the compelling reasons for the nonliability of a public officer, clothed with discretion, are entirely absent. Of course, a mere employee doing a mechanical job, as were the defendants here, must exercise some sort of judgment in plying his shovel or driving his truck — but he is in no sense invested with a discretion which attends a public officer in the discharge of public or governmental duties, not ministerial in their character. In short, the defendants were not public officers, nor were they in the performance of any discretionary act. The mere fact that a person charged with negligence is an employee of others to whom immunity from liability is extended on grounds of public policy does not thereby excuse him from liability for negligence in the manner in which his duties are performed, or for performing a lawful act in an unlawful manner. The authorities generally hold the employee individually liable for negligence in the performance of his duties, notwithstanding the immunity of his employer, although such negligence may not be imputed to the employer on the principle of respondeat superior, when such employer is clothed with a governmental immunity under the rule. Lewis v. Hunter, 212 N.C. 504, 507,508, 193 S.E. 814; Florio v. Jersey City, 129 A. 470, 40 A.L.R., 1353 (anno.); Skerry v. Rich, 228 Mass. 462, 17 N.E. 824; Anno. 40 A.L.R., 1358. *Page 788 
The State of North Carolina has adopted this view in Lewis v. Hunter,supra, and any extension of immunity in that respect is a matter of legislative action.
It is proper to say, however, that it is a broad general rule that any person who violates a legal duty he owes to another is liable for the natural and probable consequences of his act or omission, and exceptions to that rule should not, by mere judicial rationalization, be extended beyond the recognized public policy out of which they spring.
While the defendants have not so contended, it has been suggested that they were under the direction of superiors, who required the work to be done in a particular way. In support of this view, we have cited to usDorsey v. Henderson, 148 N.C. 423, 62 S.E. 547, in which the city was held not to be liable in damages for the act of cutting down the level of the street in front of plaintiff's store. That case merely decided that a municipal corporation "has authority to grade its streets and is not liable for consequential damage, unless the work was done in an unskillful andincautious manner," citing Meares v. Wilmington, 31 N.C. 73. The case proceeds entirely upon the principle that a municipality is under no liability to adjacent owners for changing the grade of the street, in the absence of a statute fixing such liability, and that any injury arising from this cause is damnum absque injuria. No question of negligence is involved, and there was no consideration of the doctrine of immunity as we have discussed it, the nonliability of the defendant town depending upon an entirely different principle.
There is no evidence in the record whatever that the defendants were in the actual supervision of their employers, the Highway Commission, or any superior officer or agent thereof, or that any such person was present. The inferences from the whole evidence are directly contrary to such assumption. They were in the performance of a mechanical task, in which it is to be supposed that they were skilled, and were in direct charge of operations. The exigencies of the affair in Hiddenite were not to be controlled from Raleigh or by any officer or functionary whatever two hundred miles from the scene of action; and the presumption that any of those officers had directed the defendants to perform a lawful act in an unlawful or negligent manner is too rash to be indulged in, and, if true, would afford no immunity to any party participating.
The defendants could avoid liability not by any supposed immunity, but only upon the same principle that any other person might be protected in the doing of a lawful act, and that is, that they had not done it negligently, to the injury of another. Meares v. Wilmington, supra; Lewisv. Hunter, supra.
Plaintiff alleges that the defendants' negligence in failing to use any protection to keep the dust, dirt and other accumulations which were *Page 789 
blown from the highway by the road sweeper operated by the defendants, out of his store, resulted in substantial damage to him. The evidence in support of this allegation is sufficient to carry the case to the jury.
The judgment of nonsuit erroneously entered by the court below is
Reversed.