AARON ROYSTON *v.* ILLINOIS CENTRAL R. R. Co.

1. RAILROADS. *Injury to passenger. Separate accommodations for races. Remote cause.*

Plaintiff, a colored passenger, was severely beaten while traveling on a train of defendant, which carried only one first-class coach and a smoking car. Plaintiff and other passengers, white and colored, were in the former, and his evidence tended to show that the conductor ordered him into the smoker; that he found it full of tobacco smoke, nauseating to him, and he remained on the platform, where the conductor cursed and beat him. Defendant's testimony tended to show that plaintiff was drinking and boisterous, and that lady passengers complained of his conduct, whereupon the conductor told him to behave or go into the other car; that he went upon the platform and was afterwards assaulted by another passenger, in the absence and without the knowledge of the conductor. *Held,* that a verdict for defendant would not be disturbed, and that it was proper to refuse instructions that the failure to provide separate accommodations for white and colored passengers, as required, was the proximate cause of the injury.

2. SAME. *Assault by fellow-passenger. Liability of carrier.*

A passenger on a train who is assailed and beaten by a fellow-passenger while the conductor is absent attending to his duties in another part of the train, not knowing of the assault or that it was threatened, cannot recover damages of the railroad company therefor. The court will not extend the rule of the carrier's liability for assaults by fellow-passengers, announced in *N. O. R. R. Co.* v. *Burke,* 53 Miss. 200.

3. PRACTICE.    *Reopening case before jury.*

    At the conclusion of the trial, as the jury retired, plaintiff excepted to a ruling of the court as to how much of defendant's affidavit for a continuance setting out the testimony of an absent witness was in evidence. Thereupon, the witness having arrived, the judge, of his own motion, recalled the jury and stated that he would allow the witness to testify and exclude the affidavit, and, in the interest of justice, would reopen the whole case, for additional evidence, argument, and instructions, on either side.    The affidavit was excluded and the witness testified on behalf of the defendant.    This action of the court was proper, and is to be commended.

FROM the circuit court of Benton county.

HON. W. M. ROGERS, Judge.

Action by appellant against the appellee for damages.

On the evening of December 12, 1888, appellant, Aaron Royston, a colored man, purchased of the agent of the Illinois Central R. R. Co. at Holly Springs, Miss., a ticket, entitling him to transportation over the line of its road to Water Valley, Miss.   He and a companion, another negro, boarded the south bound passenger train and seated themselves in the first-class coach.   Besides the express, mail and sleeping cars, the train carried only one first-class passenger coach and a smoking car.   There were no separate accommodations for white and colored passengers as required by the act of March 2, 1888, and the car in which plaintiff was seated was occupied by other passengers, white and colored.   While on the train, after dark and some time after starting, appellant being on the platform between the first-class coach and the smoking car, was assaulted by some one who severely injured him by striking him with a pistol.   For such injuries this suit was brought against the railroad company.   The declaration is upon the contract, alleging in one count that the conductor did the beating.   The defendant pleaded the general denial.

On the trial the testimony for plaintiff tended to show that the conductor, without cause, directed him to go out of the first-class coach and into the smoking car, and that he started to comply, but finding the other car full of tobacco smoke, which was nauseating to him, he remained on the platform; that the conductor spoke

to him several times while there, and endeavored to compel him to enter the smoking car, and, failing in this, finally cursed and beat him.

Defendant's testimony tended to show that the plaintiff was drinking and boisterous; that two lady passengers, on account of this, asked the conductor to provide them with other seats; that the conductor informed plaintiff that he must behave or go into the other car, whereupon he went on the platform and stubbornly remained there, in the way of other passengers getting on and off; that it was dangerous and a violation of the rules to ride on the platform, but that plaintiff could not be induced to go into either car; that while there a white passenger, having observed the conduct of plaintiff, got into an altercation with and assaulted him; that the conductor at the time was in another part of the train, and knew nothing of the beating until afterwards, and could not have prevented it. Plaintiff denied drinking on the train, but stated that he had taken a drink of whisky at a bar-room in Holly Springs shortly before leaving. It was shown that none of the other colored passengers in the car were molested by the conductor. The question of fact mainly controverted was whether the conductor did the beating. As to this there was a direct and positive conflict between the witnesses for the respective sides. Plaintiff asked the court, among other things, to instruct the jury that the defendant, being a carrier for hire, was bound to provide for plaintiff safe and comfortable cars, and, for a failure to do this, plaintiff was entitled to recover; that proof of injury was *prima facie* evidence of negligence; that if plaintiff was forced to ride on the platform, defendant was liable, and it was immaterial who did the beating; that the failure to provide separate accommodations for white and colored passengers was negligence, and, if it was the proximate cause of the injury, plaintiff was entitled to recover. These instructions were refused.

The court gave instructions for the plaintiff and defendant respectively, submitting to the jury the questions of fact as to whether the plaintiff was improperly and without cause excluded from the coach in which he was seated; and as to whether he was

assaulted by the conductor or a stranger; and whether the injury was caused by the fault or negligence of the defendant's servants. Eleven instructions were given on behalf of plaintiff, defining his rights as a passenger and the duties of the defendant as a common carrier, and among other things the jury was instructed that the defendant as such carrier was "required to do all that human care, vigilance, and foresight can reasonably do, in view of the character and mode of conveyance adopted, to prevent accidents or injury to passengers."

By the first instruction granted for defendant it was announced that there could be no verdict for plaintiff on the preponderance of evidence, unless the evidence was sufficient to satisfy the jury of the truth of all of the facts on which plaintiff's right to recover depended.

The second instruction announced that the plaintiff could not recover if his own wrong proximately contributed to the injury. And the jury was also told that it was the right and duty of the conductor to eject the plaintiff from the coach if his conduct was boisterous and offensive to other passengers.

The court also instructed the jury for defendant that the plaintiff could not recover if the injury was inflicted by a fellow-passenger, and the conductor could not have prevented or mitigated it; also that it was the duty of the conductor to protect other passengers, even to the extent, by reasonable force, of expelling plaintiff from the car, if his conduct was improper and offensive; and that it was not incumbent on the conductor to neglect his other duties and stand on the platform to protect plaintiff, but that if the plaintiff improperly remained on the platform and was assaulted by another passenger, without the knowledge or concurrence of the conductor, who at the time was attending to his duties in another part of the train, the verdict should be for defendant. There was also an instruction for defendant as to exemplary damages; but, in view of the decision of this court, it is unnecessary to set it out. The instructions which were given and refused are lengthy and numerous, and it is not considered necessary to insert them here.

The opinion of the court contains a further statement of the case.

Verdict and judgment for defendant.    Motion for new trial over-ruled.    Plaintiff appeals.

*Calhoon & Green*, for appellant.

1. It was error to grant instructions for defendant, over objection of plaintiff, that were not applicable to the issue joined. Justification for the breach of contract could not be set up under the plea of *non assumpsit*. Therefore it was error to instruct the jury as to any boisterous conduct of plaintiff.

2. It was error for the court to withdraw the affidavit for continuance from the jury and allow the witness Milan to testify after the case had passed from the field of presentation into that of deliberation. This was such an interference with the management of defendant's side of the case as to indicate to the jury that the court leaned that way. It is unlike *Offit* v. *Sick*, Walker (Miss. R.), 103, where the jury desired to have the testimony of a witness *repeated*. We find no precedent for the action of the court. After a case has been closed and submitted to the jury, the utmost the court can do is to recall a witness, in case of dispute as to his testimony. " Even this power should be sparingly exercised." *Duff* v. *Snider*, 54 Miss. 253.

3. The court erred in refusing plaintiff's instructions as to the duty of defendant to provide separate accommodations for white and colored passengers. The law requires separate first-class coaches for negroes. Here the difficulty was, that plaintiff, a negro, was *loud-mouthed*, as was characteristic of the race, and this was objectionable to the white passengers. Recognizing just such difficulties, the law provides for separate cars. Plaintiff having a first-class ticket, was entitled to transportation in a first-class coach occupied only by those of his own race. It was a breach of the contract not to furnish such. As requested, the court should have instructed the jury, that if the failure of defendant to provide separate accomodations was the proximate cause of the occurrence of the injury, the verdict should have been for plaintiff. It seems

clear from the evidence that the real cause of the trouble was that the negro would not obey the command or wish of the whites for him to go out of the coach into the second-class car. If there had been separate first-class accommodations, no trouble would have arisen.

4. The other instructions for plaintiff were improperly refused. They merely told the jury that on the facts recited therein, the plaintiff was entitled to recover. No directions as to the amount. The sixth instruction was merely to the effect that proof of the facts averred in the declaration, entitled the plaintiff to recover, unless the company established some defense to the satisfaction of the jury. This was not based on the presumption of the statute.

5. It was error to instruct the jury for defendant, that plaintiff could not recover on a preponderance of the evidence. It was also error to instruct about contributory negligence. The only proof of contribution was that plaintiff furnished the head to be beaten. Besides, there was no plea to support this defense. Again, the action was on contract, and even if plaintiff had been at fault, this would have only reduced the amount of recovery; it would not justify a verdict for defendant.

It was error to give plaintiff's third charge, for there was no evidence in support of it that plaintiff was intoxicated. In no view of the case did the conductor have the right to insist that the plaintiff should go into a second-class car.

Defendant's fifth instruction is erroneous. If it be true that the conductor did not assault plaintiff or procure the assault, this would not entitle the defendant to a verdict, but would only relieve of exemplary damages. The other instructions for defendant were improper, as there was no support for them in the evidence.

*W. P. & J. B. Harris*, for appellee.

1. The court properly allowed the witness Milan to testify. No harm was done the plaintiff. It is not suggested that plaintiff was taken by surprise, and there was no application after that for a continuance to secure rebutting evidence. In withdrawing the

affidavit, the court stated that either side might offer further evidence and instructions and re-argue the case to the jury. This was fair, and removed all objections. For the furtherance of justice, the trial court is necessarily entrusted with discretionary power in matters of this character. *Hoover* v. *Pierce*, 26 Miss. 627; *Edwards* v. *The State*, 47 Ib. 581.

The court will not grant a new trial for errors which another trial cannot cure, nor to compel the circuit court to do the identical thing already done, but in a different way. 8 S. & M. 298; 12 Ib. 161; 37 Miss. 671; 35 Ib. 559.

2. The jury believed the witnesses for defendant on the questions of fact involved, and the issue was fairly submitted. There were persons of both races in the car, and it is quite clear that it was on account of plaintiff's conduct that complaint was made as to him. It is incredible that the conductor would single him out and arbitrarily order him from the car, leaving other colored passengers there.

Plaintiff's boisterous conduct was offensive to passengers and the conductor told him to be quiet or leave the car. He could have put him off the train if necessary. We got plaintiff out of the ladies' car in strict accordance with law, and the duty to other passengers, ticket or no ticket. No force was used. His alternative was to behave properly or rack out and take the consequences, tobacco smoke with the rest.

The act of March 2, 1888, requiring separate accommodations, upon which plaintiff relies, gives the conductor power to expel disorderly persons. Independently of the statute, the conductor had this right. Indeed it was a duty which if neglected would subject the company to liability. Hutch. on Carriers, §§ 298, 401; 53 Pa. 512; 55 N. Y. 108.

3. The witnesses for plaintiff do not rest the case upon the theory that the conductor or other employés stood by and saw the beating. Nor was it seriously urged that the conductor was under a duty to protect the plaintiff while riding on the platform, particularly as riding there was dangerous and was forbidden by the rules of the company. But it is stated that the conductor himself did the beating. This is positively denied by the conductor him-

self and other disinterested witnesses, one of whom is Milan, a fellow passenger, who testified that he and not the conductor struck the plaintiff.   The clear preponderance of the testimony shows this to be so.   The plaintiff went upon the platform and stubbornly remained there.   Another passenger got into an altercation with and assaulted him in the absence of the conductor.   It is clear that the company is not liable.   Hutch. on Carriers, 401 ; 53 Pa. 512.

The contract of carriage does not insure against bodily harm not arising from the carrier's negligence.

4. The act of March 2, 1888, has no bearing on this case, and therefore plaintiff's instructions as to this were properly refused.

It was also proper to refuse the sixth instruction by which the court was asked to tell the jury that if plaintiff proved the case made in the declaration, then it was for the defendant to meet and avoid it.   It was for the plaintiff to make out his case throughout and completely.   There were no facts *res ipsa loquiter.*   Whittaker's Smith on Neg. 419.

The court gave all the instructions plaintiff was entitled to.   His case was fairly presented to the jury.

CAMPBELL, J., delivered the opinion of the court.

If the testimony for the defendant is true, the verdict is manifestly right, and must stand, unless there was some error of law which may have produced it.

It is plain that the jury believed the testimony for the defendant, and this settles the question in favor of its credibility for the consideration of the case by this court, especially as we think, after a careful examination of all the evidence, the jury was fully justified in the view taken.

The errors of law insisted on in the court below, as shown by the motion for a new trial, are the action of the court in recalling the jury to hear the testimony of the witness, Milan, after the argument had been concluded ; and upon the instructions of both sides.   There was a dispute as to what part of an affidavit for a continuance on account of the absence of one Milan, a witness for

defendant, should be considered by the jury, and counsel for the plaintiff, just as the jury retired, asked the court to note an exception to its ruling as to that. "Whereupon the court in order to remove all objection and meet the ends of justice, stated that he would re-open the whole case and allow each side to introduce testimony and re-argue the case if they desired, and present further instructions, and would exclude all of the affidavit as to Milan's testimony. . . . . The jury was thereupon brought back into the box, and the witness, Ben Milan (whose arrival in court just as the argument of the case was closed had been made known to the court), was sworn as a witness, and testified." This is a quotation from the bill of exceptions. There was no error in this. The course of the court is worthy of all commendation, since the true object of every trial in court is to ascertain the truth, and no right of the plaintiff was violated in the course pursued. As to such matters, large discretion must be permitted to the trial court.

The refusal of the second and third instructions asked by the plaintiff was made the ground of the motion for a new trial. These instructions are to the effect that as the law required separate accommodations on the railroad trains for the white and colored races, if the company had not provided separate cars for them, and the injuries the plaintiff had suffered were the proximate result of this failure to provide separate accommodations, he was entitled to recover. The proposition contained is that if there had been separate cars, the plaintiff would have been undisturbed in his seat, and therefore he may charge the consequences that befell him to the want of such separate cars.

The court did right to refuse these instructions. It was proper to affirm as matter of law that there was no such connection or relation between the neglect to provide separate cars for the two races and the treatment of the plaintiff as to entitle him to claim anything in this action for such failure. The plaintiff sought and obtained passage on the train as it was, and cannot claim anything except for some wrong done him on that train. The connection of his injury with the neglect to furnish separate cars is about as

"proximate" as the drink of whisky he took in Holly Springs. Probably the relation of cause and effect between the drink and his rough treatment was more immediate than the neglect to furnish cars.   We perceive no error in the action of the court on the instructions on either side.   It is manifest that no liability for plaintiff's injuries was incurred by the defendant, if its testimony is true, and that was left to the jury, which credited it.

The utmost limit of the novel modern doctrine, that common carriers are responsible for injuries to passengers by fellow passengers, was stated in the opinion of the court, composed of two judges, in *N. O. R. R. Co.* v. *Burke*, 53 Miss. 200.   That doctrine does not receive the assent of our judgment, and if in future, when the question may be presented for decision, we shall feel constrained to yield to that decision as authority for the rule it announces, we shall certainly not extend the doctrine so as to embrace any other than a case falling clearly within it.   As the instructions in this case conform to the announcement in the case cited, we are not presented an opportunity to say more in just criticism of that decision, but are justified in what we have said in order to exclude the conclusion which might otherwise be drawn as to the view we entertain of it.

*Affirmed.*