## HORNE v. POWER CO.

(Filed April 10, 1906).

*Master and Servant—Appliances—Instructions—Contributory Negligence—Electric Companies.*

1. It is the duty of the employer to furnish to his employee reasonably safe appliances with which, and a reasonably safe place in which, to discharge his duties and to maintain and keep them in such condition, and there is a correlative duty of the employee to exercise reasonable care in using the appliances and means furnished him.

2. It is the duty of the employer to properly inform the employee of unusual or extraordinary danger and hazard incurred in the employment and the duty of the employee to avail himself of the information thus derived and instruction given him.

3. The court erred in refusing to give defendant's prayer that "If the jury shall find from the evidence that the plaintiff could have performed his duties in lifting and lowering the lamps by the exercise of reasonable care and prudence, without coming in contact with the iron awning near by, and that, if he had stood upon the steps attached to the pole in doing his work, without contact with the iron awning, he would have been insulated, and would not have received the shock, then, in placing himself in contact with the iron, he was guilty of contributory negligence."

4. If a prayer for instruction is correct in itself and there is evidence tending to sustain it, the court should give the instruction either in the form requested or substantially so.

5. When an employee, in the service of an electric company, is provided with implements or apparatus, by the use of which he may be able to avoid injury to himself, a failure on his part to use such implements or apparatus will prevent recovery for any injury received by him which might have been averted by the use thereof.

ACTION by Melvin Horne against Consolidated Railway, Light and Power Co., heard by *Judge W. R. Allen* and a jury, at the October Term, 1905, of the Superior Court of NEW HANOVER.

This was an action prosecuted by the plaintiff to recover damages for personal injuries sustained while in the employment of the defendant company. The facts material to the question upon which the appeal is disposed of are: Plaintiff, twenty-three years of age, had been in the defendant's employment, as motorman and conductor, on its surface railway cars one year. Some five or six months prior to the day of the injury he was, at his own request, assigned to the duty of trimming the arc lamps on the streets of the city of Wilmington. When he was assigned to this duty, Mr. Horton, who was an electrician in the employment of the defendant, explained his duties, went with him four days, showed him how to trim the lights and fix them. Told him that if he had any trouble about the lights, which he did not understand, to come to him. Plaintiff had nothing to do with wires; he was not an electrician. Horton was not in the employment of defendant company at time of injury. He was introduced and his testimony tended to corroborate that of plaintiff. Defendant introduced R. Hunt, an electrician in its employment. He testified, among other things, that when plaintiff was taken from the trolley and assigned to the arc lights, he instructed him how to do his work; explained his duties and responsibilities in a general way; explained the amount of shock he was liable to get anywhere on an arc circuit. When he reported the shock he had gotten from an arc lamp in the Coast Line building, he told him he must always consider the current as being on the line, never depend upon the insulation. In other words, always consider all wires as bare and live, as a matter of precaution. The defendant maintained a system of arc lights in the streets of the city of Wilmington, together with a system of wires for other purposes not material to be noted. The wires of the several systems crossed at certain points. Those carrying the current to the arc lamps were strung upon poles posted on the edge of the sidewalks as prescribed by the city ordi-

nance. The lamps were lowered for the purpose of trimming by means of a wire cable connecting with a drum attached to the poles several feet from the ground and operated by attaching a handle or crank made of iron covered with wood where it was necessary to grasp it with the hand of the operator: the wood was held upon the iron rod by means of an iron bolt at the end. The operator ascended the pole by means of wooden steps made by nailing strips across the poles beginning near the ground and continuing upwards a few feet, after which iron steps are attached to the pole. One of these poles was posted at the corner of Front and Dock streets, to which was attached a drum for the purpose of lowering the arc lamps to be trimmed. Near by the pole was an iron frame attached to a store for the purpose of supporting an awning, one of the iron poles of this frame stood within a few inches of the light pole. On February 22, 1904, plaintiff went to the said pole and went up the first two or three steps which were of wood, the rest of iron. He says: "I had my right foot on the wooden step and the left on the iron step. The distance between these steps I do not know. (Witness showed position in which he was standing). The crank fits on this side of pole (illustrating by model), and on side next to awning. I went up the pole. I put my handle and hand on there, and put this leg around the pole, which brought my leg between the awning and the pole and steps set on this side. I put my leg in between there, on a peg on that side and put my right foot on this side, that brought this leg against the awning. I lowered my lamp down, turned my handle loose and started to go down the pole. I noticed my lamp was not low enough to reach it from the ground. I put myself back in the same position. I took hold of the handle and started to reach the latch. I don't know whether I got hold of it or not, I don't know where I went to—it knocked me senseless.

It appeared from the testimony that the plaintiff was in-

jured by reason of a live wire coming in contact with the
light wire from which the insulation had worn off. The
causes bringing about this condition originating near the
Atlantic Coast Line from a wire belonging to that system.
The manner in which the wires came in contact was illus-
trated by model used in the trial below and in this court.
In view of the disposition which is made of the appeal, it is
not material to set forth that phase of the evidence. There
was testimony tending to show that notwithstanding the con-
dition of the wires, it would not have been possible for plain-
tiff to have sustained an injury if he had not put his leg
around the iron pole and his hand had not come in contact
with the iron bolt which secured the wood on the handle of
the crank. There was evidence tending to show that within
a few minutes after the injury a witness ascended the pole
and lowered the lamp, as the plaintiff was endeavoring to
do, without sustaining injury. There was also evidence tend-
ing to show that there were four wooden steps to the pole,
two on each side, north and south, the first one 18 inches from
the ground and the others 18 inches apart. A witness for the
defendant testified: "I have made a test and am sufficiently
familiar with the location of the pole to state whether or
not a man can lift and lower the arc lamp with this crank
and handle without touching the iron awning, and you can
raise it and lower it without touching the awning, probably
in two or three positions. I made on the same day and after-
noon after the accident a personal inspection of this sec-
tion of the system for the purpose of ascertaining the cause
of this accident. In the beginning I found that the arc lamp
when it was down at the pole where plaintiff was injured
made this contact and he got the current through the handle
to the awning pole. In the meantime, in consequence of in-
formation from the Coast Line, I went to the corner of Front
and Red Cross streets where the Coast Line offices are located.
In examining there I found that there was a telephone wire

laying across this opposite primary wire to the other primary wire with which Mr. Horne was connected at Front and Dock streets. This telephone wire was again crossed with another telephone guy wire, the guy wire being again tied up to the A. C. L. telephone messenger wire, which was a dead ground wire, and where it was tied up to the wire it burned through and gave a dead ground."

Mr. Hunt testified: "I have made a practical test to see whether or not a man can raise or lower that lamp where the plaintiff received his accident without touching the iron awning. He can do it easily. I have seen it done in three different positions. I saw it done today. The awning and pole and framework are exactly today as they were at the time of the accident, except two primary wires are not there now. These primary wires were removed because in doubling the wire to place a motor in Mr. Johnston's store we moved the transformer up on Dock street above Front street. I made the test with Mr. Williamson. He did actually raise and lower the lamp in my presence in the several different ways stated."

There was other evidence for both plaintiff and defendant bearing upon the issues. The court submitted the following issues to the jury:

1. Was the plaintiff injured by the negligence of the defendant?

2. If so, did plaintiff by his own negligence contribute to his injury?

3. What damages, if any, did plaintiff sustain?

The defendant requested the court in apt time to instruct the jury: "If the jury shall find from the evidence that the plaintiff could have performed his duties in lifting and lowering the lamps at Front and Dock streets, by the exercise of reasonable care and prudence, without coming in contact with the iron awning near by, and that, if he had stood upon the steps attached to the pole in doing his work, with-

out contact with the iron awning, he would have been insulated, and would not have received the shock, then; in placing himself in contact with the iron, he was guilty of contributory negligence and they should answer the second issue "yes."

His Honor declined to so instruct the jury. There were other asignments of error, which it is not necessary to consider. The defendant duly excepted. Judgment having been rendered upon the verdict, defendant excepted and appealed.

*W. Kellum, H. McClammy, Rountree & Carr* for the plaintiff.
*Meares & Ruark* and *Davis & Davis* for the defendant.

CONNOR, J., after stating the case: It is the duty of the employer to furnish to his employee reasonably safe appliances with which, and a reasonably safe place in which, to discharge his duties and to maintain and keep them in such condition, and there is a correlative duty of the employee to exercise reasonable care in using the appliances and means furnished him. These are the cardinal principles upon which the duties and liabilities of employer and employee are based. They include, of course, the duty of the employer to properly inform the employee of unusual or extraordinary danger and hazard incurred in the employment and the duty of the employee to avail himself of the information thus derived and instruction given him. These propositions are entirely independent of any question of assumption of risk or the duty of furnishing safety appliances prescribed by statutes or by the courts as in *Troxler's case.* The principle is well stated in a recent work on the subject: "At common law, the master impliedly agrees to use reasonable care to provide reasonably safe

premises and places in and about which the servant is required to work, to furnish reasonably safe and suitable machinery and a sufficient supply of proper materials, tools and appliances for the work to be done and at all times during the continuance of the work to repair and keep in the same safe and suitable condition." Dresser Employer's Liability, 192; *Chesson v. Lumber Co.,* 118 N. C., 59; *Whitson v. Wrenn,* 134 N. C., 86; *Creech v. Cotton Mills,* 135 N. C., 680; *Bottoms v. Railroad,* 136 N. C., 472; *Hicks v. Manfg. Co.,* 138 N. C., 319; *Pressly v. Yarn Mills,* 138 N. C., 410. While some difference of opinion exists as to the manner of applying the principle in the trial of causes, when seeking to fix the legal liability for an injury, the courts are unanimous regarding the general principles. We find no valid objection to His Honor's instruction to the jury regarding the defendant's duty to establish and maintain a system of wires, when charged with electricity, by using every means for the safety and protection of its employees known to science and in general use, and to constantly and repeatedly, at short intervals, inspect its own and other wires liable to come in contact with them. Insulation is a positive duty. There was ample evidence to sustain the plaintiff's contention that there was negligence in that respect. The defendant says however that may be, it had furnished to plaintiff a perfectly safe place and appliance for the purpose of performing his duty. That before entering upon the performance of the duty he was instructed how to do the work safely and that after entering upon the employment he was told to regard every wire as bare and live as a precaution. That notwithstanding the very peculiar and unexpected conditions by which the wire at the pole on Front and Dock streets became charged with electricity, the plaintiff would have been absolutely safe if he had used with reasonable care and caution the means and appliances furnished him. That if

he had obeyed instructions given him, it would have been impossible for him to have sustained any injury. That notwithstanding the proximity of the post to the frame of the iron awning, he had room to stand upon the wooden steps and lower the lamp. It was the office of the third prayer for instruction to present defendant's contention to the jury in that aspect of the case. We are of the opinion that there was evidence which, if accepted by the jury, tended to sustain the defendant's contention. The third prayer for instruction is directed to the second issue. It presents to the jury the question whether the defendant had furnished a safe method and place for plaintiff to do his work and whether by the exercise of reasonable care and prudence in the use of such method he could have lowered and trimmed the lamp, without coming in contact with the iron awning. We think that defendant was entitled to have this question submitted to the jury. There was evidence upon which the jury may have found the fact to be as contended by the defendant. There was also evidence tending to sustain the plaintiff's contention. In this condition of the evidence it became a question for the jury. It was clearly the duty of the defendant to furnish to the plaintiff a reasonably safe place and reasonably safe means to enable him by the exercise of reasonable care and caution to do the work in safety. Whether it had done so, was a question for the jury. It is true that His Honor said to the jury that it was the duty of the plaintiff to use ordinary care and "If he failed in this duty and this was the real cause of the injury, then he would be guilty of negligence, and it would be your duty to answer the second issue "yes." This was correct so far as it went and in the absence of any more specific prayer it would not be open to defendant to complain. The real controversy upon this issue was whether, notwithstanding the negligence of defendant in permitting its wire to become and remain for an unreasonable length of time without insulation, it had, in

providing a place and method for doing his work, insulated the plaintiff from contact with the wire. In other words, defendant contends that it had made a double provision for the safety of its employees—first, by insulating its wire—and if for any reason that failed by insulating the employee from contact with the wire. That "as a matter of precaution" it had instructed plaintiff "to consider the current as being on the line, never depend upon the insulation, always consider all wires as bare and live." That it had, in addition to this instruction, provided appliances, which, if used with reasonable care and caution, insulated the plaintiff from danger. The burden of establishing this contention was upon defendant. We think that if established with the further fact that plaintiff failed to exercise "reasonable care and prudence" in the use of these means, the defendant is not liable to the plaintiff for the injury sustained. While it is true that parties are not entitled to have their contentions submitted to the jury in the precise language which they may adopt, it is also true that if the prayer for instruction is correct in itself and there is evidence to sustain it, the court should give the instruction either in the form requested or substantially so: "Where instructions are asked upon an assumed state of facts which there is evidence tending to prove, and thus questions of law are raised which are pertinent to the case, it is the duty of the judge to answer the questions so presented and to instruct the jury distinctly what the law is, if they shall find the assumed state of facts; and so in respect to every state of facts which may be reasonably assumed upon the evidence." *State v. Dunlop*, 65, N. C., 288. The rule is clear and we are quite sure that His Honor was of the opinion that he had complied with it. He did state at length and fairly the contentions of the parties, but upon a careful examination of the charge, we do not think that he instructed the jury in substantial compliance with the defendant's third prayer. There appears to have been but little controversy in regard to the condition of

the system and the source of the trouble with the wire near the pole on Dock and Front streets. The most seriously controverted phase of the case was directed to the second issue. While, as indicated by the uniform decisions of this court, certainly of late years, there is no disposition to relax the principles upon which the primary duty of the employer to furnish to and keep in repair, reasonably safe ways, appliances and methods for the performance of the duties of his employees, and to give notice of extra hazards and dangers incident to such work and the machinery used therefor, nor to extend the doctrine of the assumption of risk, we think the correlative duty of the employees to exercise reasonable care and observe that degree of caution which their own safety as well as the interest of the employer demands, to avoid injury both to themselves and to the public, should be enforced. The rule as applied to employees in the service of electric companies is thus stated: "When the employee if provided with implements or apparatus, by the use of which he may be able to avoid injury to himself, a failure on his part to use such implements or apparatus will prevent recovery for any injury received by him which might have been averted by the use thereof." Joyce on Elec., section 668. For failure to give the instruction prayed, there must be a

New Trial.