B. F. PENNY v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 26 October, 1910.)

1. Carriers of Passengers — Dangerous Conditions — Passengers' Safety—Conductor's Duty.

While a common carrier is not an insurer, its servants are required to exercise the highest degree of care in the transportation, as well as the protection, of passengers from actual impending assaults of fellow passengers and intruders; however, the carrier is not required to foresee and guard the passenger against all assaults, but only against such as from the circumstances may reasonably be expected to occur.

2. Carriers of Passengers—Employee a Passenger—Wrongful Acts.

An employee of a railroad, but in this instance but a passenger, and not engaged in the performance of a duty to his employer, must be regarded as a passenger, in an action against the railroad company for injuries to a fellow passenger inflicted by another passenger as a result of his acts, and a charge which assumes that the defendant is in any event liable for his acts is erroneous.

3. Same—Acts of Another—Intervening Cause—Evidence—"Fracas" —Causal Connection.

C., a passenger on defendant's train, being partly intoxicated, became disorderly between stations, whereupon the conductor with the assistance of the porter, the baggage man and L., another

passenger, searched the disorderly passenger for arms, and entirely quieted the disturbance before the train reached the next station. There the disorderly passenger alighted, and, with the train still standing, got into a violent altercation with L., who borrowed a pistol from the baggage-master, just at the time the plaintiff, also a passenger, was alighting at the station, his destination. L. attempted to fire on C., his pistol snapping, and C. thereupon drew a pistol, fired at L. and inflicted wounds on the plaintiff. There was evidence that the conductor was in position to see the danger of plaintiff, and permitted him, without warning, to place himself, by alighting, in a place of danger. *Held*, (1) A charge to the effect that defendant would be liable if the baggage-master knew the purpose for which he loaned the pistol, is erroneous, there being no evidence of such knowledge; (2) the act of loaning the pistol was not the proximate cause of the injury resulting from the stray bullet, and there is no causal connection between them.

4. **Same—Contributory Negligence—Instructions—General Terms—Specific Requests.**

In an action for damages against a railroad for injuries received by plaintiff, a passenger, from a stray bullet in a fracas between two other passengers, there was evidence that the train had stopped at the station and conflicting evidence that the shooting occurred in the presence of the conductor under circumstances wherein he should have warned plaintiff in time, and of circumstances under which plaintiff himself should have seen the danger in time to have avoided the injury. *Held*, error to refuse to charge, at defendant's request, that plaintiff could not recover if he did not do what a reasonably prudent man would have done in avoiding danger; and if he did not turn out of his way and avoid the injury, which by the exercise of his senses for his own protection he could have avoided, and thus failed to do so, his contributory negligence would bar his recovery; and a charge upon the plaintiff's duty in general terms, as to his exercising his senses for his own protection, is insufficient compliance with a correct request pointing out the particular phases of the evidence.

5. **Carriers of Passengers—Dangerous Conditions—Duty of Conductor—Duty of Passengers.**

It is the duty of the conductor to warn the passengers of danger to them, obvious to him, when they are alighting from the train at a station, and the railroad is responsible in damages arising from his neglect of this duty when the passengers could not perceive the dangers while acting with the care of a prudent man in the exercise of his faculties.

PENNY *v.* RAILROAD COMPANY.

APPEAL from *Cooke, J.,* at the April Term, 1910, of NEW HANOVER.

Civil action to recover damages for a personal injury. The following issues were submitted:

1. Was the plaintiff injured by the negligence of the defendant? Ans., Yes.

2. Did the plaintiff by his own negligence contribute to his injury? Ans., No.

3. What damage, if any, has the plaintiff sustained? · Ans., Five thousand dollars ($5,000).

4. Is the cause of action stated in the amendment to the complaint filed at April Term, 1910, barred by the statute of limitations? Ans., No.

From the judgment rendered the defendant appealed.

*A. J. Marshall, E. K. Bryan, Bellamy & Bellamy* for plaintiff.

*Davis & Davis, J. D. Bellamy, Geo. Rountree* for defendant.

BROWN, J. We are of opinion that the complaint presents but one cause of action, and that is the allegation that the defendant, while the plaintiff was a passenger on its train and entitled to its protection, negligently failed to protect him while alighting at the end of the journey, in consequence of which the plaintiff was injured. · The amended complaint sets out no cause of action and adds nothing to the original complaint. Therefore, the fourth issue in regard to the statute of limitations is unnecessary.

There is evidence tending to prove that on 18 September, 1898, plaintiff was a passenger on defendant's train from Wilmington to Leland, N. C., in the second-class car.

A negro passenger, Sam Calloway, partly intoxicated, became very disorderly, and after much trouble, was subdued by the conductor with the assistance of the porter, the baggage master Van Amringe, and one LaMotte, who was a passenger on this train, although in the employment of defendant, but not on duty. The conductor then undertook to search Calloway for arms, but found none. The disturbance had been entirely quieted before train reached Leland.

Calloway jumped off train at Leland, and while on the ground, seeing LaMotte, asked him if he meant to cut him; LaMotte replied, "I will cut your heart out," and then went in baggage car and asked Van Amringe, the baggage master, for his pistol, which Van Amringe gave him. LaMotte then went to the platform of the second-class car, the train being at full stop for passengers to get off. The negro Calloway was on the ground in a diagonal direction on the Leland side. LaMotte snapped pistol three times at him, but it did not fire. Just about this time plaintiff passed over from the second-class car on the platform of first-class car and down the steps of the car for the purpose of leaving the train. It was then that Calloway fired, and the bullet took effect on plaintiff, injuring him.

It is contended by the plaintiff that the conductor was standing on the car platform, knew what was going on, and permitted plaintiff unwillingly without warning to step down on car steps in a highly dangerous position, in consequence of which he was shot. This is plaintiff's only cause of action, and it is clearly stated in the complaint.

The defendant denies the alleged negligence of the conductor Carmon, and offers evidence tending to controvert plaintiff's contention. Defendant also contends that the plaintiff must have seen the disturbance, and carelessly and negligently, without necessity, exposed himself to obvious danger.

His Honor instructed the jury that if the defendant, by the exercise of the *"highest* degree of care and human forethought" could have prevented LaMotte from assaulting Calloway, and that this would have saved Penny from being injured, and defendant failed to do so, defendant would be liable, and to answer first issue, Yes.

This instruction is erroneous in two respects. 1. It assumes that the defendant is in any event liable for LaMotte's acts. He was not on duty, but was a passenger on the train, and in the consideration of this case must be regarded as such. The conductor in charge of the train was not bound to foresee that LaMotte would borrow a pistol and engage in a difficulty with Calloway after Calloway had left the train and ceased to be a passenger. The conductor could not foresee that Calloway had

a pistol with which injury might be inflicted on a passenger, since he had searched Calloway and found none.   2. While the carrier is not an insurer, its servants are required to exercise the highest degree of care in the transportation, as well as the protection, of passengers from actual impending assaults of fellow passengers and intruders.

For the latter purpose it must use all available means at hand. But the carrier is not required to foresee and guard the passenger against all assaults, but only against such as from the circumstances may reasonably be expected to occur.   The duty of the defendant is clearly stated in *Britton's case,* 88 N. C., 536, by *Ruffin, J.,* as follows: "And while not required to furnish a police force sufficient to overcome all force, when unexpectedly and suddenly offered, it is his duty to provide ready help sufficient to protect the passenger against assaults from every quarter which might *reasonably* be expected to occur under the circumstances of the case and the condition of the parties."   This view of the law is well sustained by authorities elsewhere. *Pounder v. R. R.* (1892), 1 Q. B. D., 383; *Royster v. R. R.,* 67 Miss., 376; *Putman v. R. R.,* 55 N. Y., 108; *Brooks v. R. R.,* 168 Mass., 164, 168.

The court further instructed the jury: "If the jury shall find by the greater weight of the evidence that a difficulty was pending between LaMotte and Calloway and Van Amringe, the baggage master on the train, with a knowledge of the purpose for which LaMotte wanted it, handed him a pistol with which he could shoot Calloway, and that LaMotte took the pistol out on the platform, and pointing the same towards Calloway tried to shoot him, but could not discharge the pistol, and this caused the said Calloway to fire the shots at LaMotte which struck the plaintiff, then the jury should answer the first issue, Yes."

It is contended that his Honor neglected to give the correlative contention of the defendant, and that he should have told the jury that if Van Amringe gave the pistol to LaMotte without any knowledge of the purpose for which LaMotte intended to use, then the defendant would not be liable on this ground.

In *Jarrett v. Trunk Co.,* 144 N. C., 299, it is held that if the trial judge undertakes to apply the law to the facts and gives

the contention of one side, it is his duty, without being requested, to give the correlative contention of the other side. But the instruction, in our opinion, is itself erroneous. 1. Because there is no evidence that Van Amringe knew or had reason to believe that LaMotte borrowed the pistol for an unlawful purpose. 2. The act of Van Amringe in lending the pistol to LaMotte was not the proximate cause of the injury to plaintiff—which was caused by a stray bullet fired from Calloway's pistol.

The accidental wounding of plaintiff did not follow in direct sequence from the act of Van Amringe, assuming for the sake of argument that the latter was guilty of negligence in lending his pistol to LaMotte. *Ramsbottom v. R. R.,* 138 N. C., 39. In this case it is held by *Mr. Justice Hoke* that the proximate cause of an injury is one that produces the result in *continuous* sequence, without which it would not occur, and which a man of ordinary prudence could reasonably be expected to foresee.

There is, in legal parlance, no direct causal connection between the act of Van Amringe in loaning the pistol and the unforeseen accidental injury to plaintiff by Calloway. *Harton v. Telegraph Co.,* 146 N. C., 429; *McGee v. R. R.,* 147 N. C., 142; *Bowers v. R. R.,* 144 N. C., 684; 1 Street's Foundations, 120. To constitute liability there must not only be a breach of duty owing by the defendant to the plaintiff and injury to the latter, but the breach of duty must be the cause, and the proximate cause, of the injury. So far as the act of Van Amringe is concerned it is a case of *post hoc,* but not *"ergo propter hoc,"* as was said by *Manning, J.,* in *Hudson v. McArthur,* 152 N. C., 452.

In *McDowall v. Great W. R. R. Co.* (1903), 2 K. B., 331, on page 337, *Vaughan Williams, L. J.,* says: "In those cases in which a part of the cause of action was an interference of a stranger or a third person, the defendants are not held responsible unless it is found that that which they do, or omitted to do—the negligence to perform a particular duty—is itself the effective cause of the accident."

That case is instructive upon this point. It was there held that the servants of the defendant had been guilty of negligence in not properly placing the railway van, but that it having been

interfered with by trespassers, the negligence of the defendant's servants was not the effective cause of the accident, and the defendant was exonerated. In *Burt v. Advertising Newspaper Co.*, 154 Mass., 238, *Mr. Justice Holmes* uses this language: "Wrongful acts of independent third persons, not actually intended by the defendant, are not regarded by the law as natural consequences of his wrong, and he is not bound to anticipate the general probability of such acts, any more than a particular act by this or that individual."

That proposition is illustrated in a great number of cases. *Cole v. German S. & L. Soc.*, 124 Fed., 113; *Laidlaw v. Sage*, 158 N. Y., 73; *Leeds v. N. Y. Tel. Co.*, 178 N. Y., 118; *Clark v. Wilmington R. R.*, 109 N. C., 430; *Butts v. R. R.*, 110 Fed., 329; *Johnson v. Association*, 68 L. R. A., 499; *Winfall v. Jones*, 1 L. R. A. (U. S.), 201.

Upon the issue of contributory negligence the court failed to give the following requested instruction, which is assigned as error: "If the jury shall find from the evidence that Penny, the plaintiff, went out on the platform and at that time the negro had the pistol aimed towards the car where Penny was, and the danger could be as reasonably apprehended by the plaintiff as by the defendant, and the plaintiff did not turn out of his way or go back to avoid the injury, and the accident happened, he would be guilty of contributory negligence. It was the duty of the plaintiff to exercise his senses for his own protection, and if he saw the danger, or could have seen it in the exercise of the reasonable care of a prudent man and failed to do so, he would be guilty of contributory negligence, and you should answer the second issue, Yes." This is a correct proposition of law and should have been given.

This instruction points to particular phases of the evidence, and it was error to refuse it, although his Honor did tell the jury in very general terms that "it was plaintiff's duty to exercise his senses for his own protection." *Horne v. Power Co.*, 141 N. C., 50.

Recurring to the allegation of negligence, the duty which defendant owed to plaintiff is to be determined by what transpired when the train stopped at Leland and the plaintiff undertook to

alight at the end of his journey.   It is undoubtedly true that
the conductor had no power to restrain plaintiff and prevent
him from leaving the train.   Nevertheless, if as is charged by
plaintiff, the conductor was standing on platform, when plaintiff
came out of the car for the purpose of leaving, and if the con-
ductor could then see that it was obviously dangerous for plain-
tiff to go down the steps at that moment, it was his duty to warn
the plaintiff and apprize him of his danger.

If the conductor, having such knowledge, failed to warn plain-
tiff and permitted him to venture on the steps ignorantly and
unwittingly in the presence of obvious danger, it would be an
act of negligence upon the part of the conductor and the defend-
ant would be liable for consequent injury.

*Per contra,* it is equally true, that if when plaintiff came out
on the car platform, he could see for himself the "fracas" go-
ing on, it was his duty to exercise his faculties, and to act with
the care of a prudent man and not venture down the steps into
the midst of obvious danger.   If plaintiff could see for himself
the apparent danger, then he needed no warning.   If then he
ventured in the face of it, the consequent injury will be attrib-
uted to plaintiff's own negligence, and he cannot recover.

New trial.

HOKE, J., concurring.   I concur in the opinion that there
should be a new trial in this case, but do not assent to some of
the positions stated in the principal opinion as ground for the
decision.   The testimony in the record, as I view it, presents
two theories on which liability of defendant may be predicated.

1. By reason of a negligent act of the conductor of the train,
in failing to warn plaintiff so as to keep him out of the line of
fire.

2.   A negligent act, the cause of the injury, on the part of
Van Amringe, the baggage master, in lending LaMotte the pis-
tol, with which he attempted to shoot the negro.

The first view seems to have been presented to the jury with-
out valid exception.   On the second, the court charged the jury:
"If the jury find from the evidence, by its greater weight, that
one LaMotte called for a pistol, with which he assaulted Sam

Calloway, and the defendant's servant, Van Amringe, the baggage master, in compliance with LaMotte's request, gave to La-Motte a pistol with which to assault Calloway, knowing, or having reasonable grounds to believe, that LaMotte was going to use the pistol for that purpose, and that after LaMotte got the pistol he did attempt to assault Calloway, by pointing the same at him and trying to shoot him, and this assault upon Calloway caused Calloway to draw his pistol and attempt to shoot La-Motte, and, in shooting at LaMotte, shot the plaintiff, Penny, then the jury should answer the first issue, Yes; and this for the reason that it was the duty of the agents and employees of defendant company to do all in their power to prevent assaults and disturbances which were likely to bring on an assault or fight, and it does not matter that Van Amringe did not personally make the assault, if he gave the pistol to LaMotte with which to make the assault, and LaMotte did make the assault, both LaMotte and Van Amringe would have been guilty of an assault with a deadly weapon, as there are no accessories before the fact in misdemeanors. And if the jury further find from the evidence, by its greater weight, that the assault would not have been made by Calloway but for the wrongful act of Van Amringe and LaMotte, then the jury should find that the plaintiff's injury was proximately caused by the neglect and wrongful conduct of the defendant, through its servants and employees." And again: "If the jury shall find by the greater weight of the evidence that a difficulty was pending between LaMotte and Calloway and Van Amringe, the baggage master on the train, with a knowledge of the purpose for which LaMotte wanted it, handed him a pistol with which he should shoot Calloway, and that LaMotte took the pistol out on the platform, and, pointing the same towards Calloway, tried to shoot him, but could not discharge the pistol, and this caused the said Calloway to fire the shots at La-Motte which struck the plaintiff, then the jury should answer the first issue, Yes."

Defendants except to this charge and assign for error what is, to my mind, a perfectly valid objection. There was testimony introduced tending to show that from the attitude and conduct of the negro, either LaMotte or Van Amringe, the baggage mas-

ter, had the present right to use a pistol in the legitimate protection of the train and its passengers or themselves, and thus presenting and requiring the view that the act of Van Amringe may have been free from fault. Under certain conditions the doctrine of self-defense is available in actions of negligence, as in other cases. *Laidlaw v. Sage,* 158 N. Y., p. 90.

Even if it is conceded that these excerpts correctly express the view tending to inculpate, the charge nowhere refers to the opposing and necessarily correlative view which tends to excuse defendant company, and to my mind the failure to present the case in this respect constitutes reversible error under the principles declared and upheld in *Jarrett v. Trunk Co.,* 144 N. C., p. 299, and *Meredith v. Coal Co.,* 99 N. C., p. 576. I am inclined to think that the charge, as given, is positively erroneous in that it fails to say that if Van Amringe, wrongfully and in breach of his duty to safeguard the passengers, supplied the pistol, etc. The portion of the principal opinion, from which I am compelled to withhold my assent, is the position maintained, as I interpret it, that there is no evidence tending to show that the act of Van Amringe, in lending the pistol to LaMotte was wrongful; or, that if it was, there is no evidence to show that such act was the proximate cause of the injury. On the first proposition, the negro, Calloway, examined as a witness for the plaintiff, testified, in respect to himself, that he was the aggrieved party throughout the occurrence. That he was wrongfully assaulted in the car by LaMotte, and the conductor without justification, shoved him down in the seat, and LaMotte, with an open knife, said, "If he (the negro) breathed, he would cut his damned throat." Shortly thereafter as the train slowed for Leland witness asked them to let him get out, LaMotte holding the knife on him. That when the witness got on the ground, he asked LaMotte if he wanted to cut witness, and LaMotte replied, "Yes, God damn you, I will cut your heart out," and by that time LaMotte called for a gun and witness was close to the car steps. LaMotte snapped the gun in his face, and witness began to run back and was feeling in his pocket for his gun. That LaMotte snapped the gun on witness

three times before witness could draw his, running backward all the time, when witness got his gun out and fired twice (the shots that caused the injury). Record, p. 45, and again p. 46.

"Q. Where did LaMotte go when he asked for a pistol?" Ans. He went back to the door of the second-class car where I had just come out, and it seems time he got to the door somebody gave him a pistol and he came back. The first thing he did after he got the pistol he snapped it in my face." The testimony showed that the original difficulty occurred in one compartment of a car, divided into a baggage car and coach for second-class passengers; that the coach connected with the baggage car by a door, and the evidence tended to show that Van Amringe was cognizant of all the facts. Speaking to the question of such knowledge Van Amringe himself testified: "My attention was called to the loud talking, and when they pulled out from Navassa, I went through the partition to the baggage car door. I noticed a crowd—not a crowd, either; it seems that Captain LaMotte and Captain Carmon were talking to a negro fellow down by the stove.

"Q. Who was Captain LaMotte? A. The conductor for the Coast Line, dead-heading to Florence to bring out a train; he was not on duty at the time. They were talking to a negro. I noticed there was going to be some trouble, and thought it best to go back in the baggage car and await developments. As we were pulling up to Leland (it is not far from Navassa to Leland, it didn't take long), when we were slowing up, I went back, opened the door and looked in as I was going in the car. Let's see—I want to get that straight—I went in the car and met Mr. LaMotte coming in there—that is the way I think. I went in the second-class car and Captain LaMotte came in at the door. I went in and got my pistol, as I expected trouble. He came in and I had my pistol in my hand. He asked for my pistol, and I gave it to him."

. "Q. What occurred from the time you gave the pistol to Captain LaMotte, where did Captain LaMotte go, and where did you go, and what did you see and what was done? A. Captain LaMotte went ahead of me out of the car, and stood on the platform of the second-class car, and on the end facing Wilming-

ton—on the rear end of the train towards Wilmington—on the second-class car. You see, when he came out of the car, he just turned around and went to the steps, he didn't go across; he went on the second-class platform to the left, and he stood up on the top step, and was aiming his pistol at the colored man, trying to shoot him, but the pistol wouldn't go off on account of having a little safety valve—it had a couple of triggers, and you had to pull both of them to make it fire; it wouldn't go off; he had it aimed at the colored man." And again:

"Q. Where was the colored man? A. He had gotten off of the train, as the train slowed up, and was standing at the edge of the swamp, about forty or fifty feet from the rear end of the second-class coach—about the same distance as that door—about forty or fifty feet—between forty and fifty feet to the right of the second-class car." And further:

"Q. Were you close enough to hear what was said by Captain Carmon and Captain LaMotte, if they had said anything? A. Yes, I reckon so. Do you mean inside the coach? Q. Right there on the platform at the time you and Captain LaMotte went out of the door of the car. A. I could have heard anything said—I was on the platform."

In the presence of this testimony, tending, as it does, to show that the conductor and LaMotte made an unlawful assault upon the negro and that LaMotte was in the wrong throughout, and Van Amringe must have known it, I think that the position assumed in the principal opinion, "that there is no evidence that Van Amringe knew or had reason to believe that LaMotte borrowed the pistol for an unlawful purpose, cannot be upheld. The counsel for defendant company, as I understood their earnest and able argument before us, made no such claim and it cannot, to my mind, be for one moment sustained. And the second position referred to, "that the act of Van Amringe in lending the pistol to LaMotte was not the proximate cause of the injury to plaintiff which was caused by a stray bullet fired from Calloway's pistol," cannot be sustained as a legal proposition, assuming as it does to have any significance, that the act of Van Amringe was not lawful. The law of proximate cause as affected by the intervening acts of an independent agent was

fully laid down by the Court in *Harton v. Telephone Co.,* 141 N. C., p. 455, *et seq.,* and in which it was held among other things as follows:

"3. There may be more than one proximate cause of an injury, and when a claimant is himself free from blame and a defendant sued is responsible for one such cause of injury to plaintiff, the action will be sustained, though there may be other proximate causes concurring and contributing to the injury."

"4. The proximate cause of the event must be understood to be that which in natural and continuous sequence, unbroken by any new and independent cause, produces that event, and without which such event would not have occurred. Proximity in point of time or space, however, is no part of the definition."

"5. The test by which to determine whether the intervening act of an intelligent agent which has become the efficient cause, breaking the sequence of events put in motion by the original negligence of the defendant, is whether the intervening act and the resultant injury is one that the author of the primary negligence could have reasonably foreseen and expected."

"6. Except in cases so clear that there can be no two opinions among men of fair minds, the question should be left to the jury to determine whether the intervening act and the resultant injury were such that the author of the original wrong could have reasonably expected them to occur as a result of his own negligent act."

When this case was again before the Court (146 N. C., p. 429) on a fuller statement of the testimony, the Court was unanimously of the opinion, "that the facts showed that the original or primary negligence had been insulated by the acts and conduct of an independent, intervening agent, and recovery was therefore denied," but the general principles laid down in the first opinion was in no wise questioned or denied and under these principles, if it is established that Van Amringe wrongfully gave LaMotte a pistol, knowing, or having reason to believe he was about to project a pistol duel in a crowd or in close proximity to a train and passengers and one of them was injured, though with the adversary's pistol, this should, in my opinion, be considered the proximate cause of the injury. Cer-

tainly on this evidence there is no wrong done defendant, in submitting the question of proximate cause to the jury. As I have heretofore said, there is testimony to the effect that the lending of the pistol was entirely justifiable and I think the defendant is entitled to have this view presented to the jury under a correct charge.

CLARK, C. J., concurs in concurring opinion.