Action to recover damages for a personal injury. The following issues were submitted:
1. Was the plaintiff injured by the negligence of the defendant? Answer: Yes.
2. Did the plaintiff by his own negligence contribute to his injury? Answer: No.
3. What damage, if any, has the plaintiff sustained? Answer: $5,000.
4. Is the cause of action stated in the amendment to the complaint filed at April Term, 1910, barred by the statute of limitations? Answer: No.
From the judgment rendered the defendant appealed.
We are of opinion that the complaint presents but one cause of action, and that is the allegation that the defendant, while the plaintiff was a passenger on its train and entitled to its protection, negligently failed to protect him while alighting at the end of the journey, in consequence of which the plaintiff was injured. The amended complaint sets out no cause of action and adds nothing to the original complaint. Therefore, the fourth issue in regard to the statute of limitations is unnecessary.
There is evidence tending to prove that on 18 September, 1898, plaintiff was a passenger on defendant's train from Wilmington to Leland, N.C. in the second-class car.
A negro passenger, Sam Calloway, partly intoxicated, became very disorderly, and after much trouble, was subdued by the conductor with the assistance of the porter, the baggage master, Van Amringe, and one LaMotte, who was a passenger on this train, although in the employment of defendant, but not on duty. The conductor then undertook to search Calloway for arms, but found none. The disturbance had been entirely quieted before train reached Leland.
Calloway jumped off train at Leland and while on the ground, (299) *Page 244 
seeing LaMotte, asked him if he meant to cut him; LaMotte replied, "I will cut your heart out," and then went in baggage car and asked Van Amringe, the baggage master, for his pistol, which Van Amringe gave him. LaMotte then went to the platform of the second-class car, the train being at full stop for passengers to get off. The negro Calloway was on the ground in a diagonal direction on the Leland side. LaMotte snapped pistol three times at him, but it did not fire. Just about this time plaintiff passed over from the second-class car on the platform of first-class car and down the steps of the car for the purpose of leaving the train. It was then that Calloway fired, and the bullet took effect on plaintiff, injuring him.
It is contended by the plaintiff that the conductor was standing on the car platform, knew what was going on, and permitted plaintiff unwittingly without warning to step down on car steps in a highly dangerous position, in consequence of which he was shot. This is plaintiff's only cause of action, and it is clearly stated in the complaint.
The defendant denies the alleged negligence of the conductor Carmon, and offers evidence tending to controvert plaintiff's contention. Defendant also contends that the plaintiff must have seen the disturbance, and carelessly and negligently, without necessity, exposed himself to obvious danger.
His Honor instructed the jury that if the defendant, by the exercise of the "highest degree of care and human forethought" could have prevented LaMotte from assaulting Calloway, and that this would have saved Penny from being injured, and defendant failed to do so, defendant would be liable, and to answer first issue, Yes.
This instruction is erroneous in two respects. 1. It assumes that the defendant is in any event liable for LaMotte's acts. He was not on duty, but was a passenger on the train, and in the consideration of this case must be regarded as such. The conductor in charge of the train was not bound to foresee that LaMotte would borrow a pistol and engage in a difficulty with Calloway after Calloway had left the train and ceased to be a passenger. The conductor could not foresee that Calloway had a pistol with which injury might be inflicted on (300) a passenger, since he had searched Calloway and found none. 2. While the carrier is not an insurer, its servants are required to exercise the highest degree of care in the transportation, as well as the protection, of passengers from actual impending assaults of fellow passengers and intruders.
For the latter purpose it must use all available means at hand. But the carrier is not required to foresee and guard the passenger against all assaults, but only against such as from the circumstances may reasonably be expected to occur. The duty of the defendant is clearly *Page 245 
stated in Britton v. R. R., 88 N.C. 536, by Ruffin, J., as follows: "And while not required to furnish a police force sufficient to overcome all force, when unexpectedly and suddenly offered, it is his duty to provide ready help sufficient to protect the passenger against assaults from every quarter which might reasonably be expected to occur under the circumstances of the case and the condition of the parties." This view of the law is well sustained by authorities elsewhere. Pounder v. R. R., (1892), 1 Q. B. D., 383; Royster v. R. R., 67 Miss. 376; Putman v. R. R., 55 N.Y. 108;Brooks v. R. R., 168 Mass. 164, 168.
The court further instructed the jury: "If the jury shall find by the greater weight of the evidence that a difficulty was pending between LaMotte and Calloway and Van Amringe, the baggage master on the train, with a knowledge of the purpose for which LaMotte wanted it, handed him a pistol with which he could shoot Calloway, and that LaMotte took the pistol out on the platform, and pointing the same towards Calloway tried to shoot him, but could not discharge the pistol, and this caused the said Calloway to fire the shots at LaMotte which struck the plaintiff, then the jury should answer the first issue, Yes."
It is contended that his Honor neglected to give the correlative contention of the defendant, and that he should have told the jury that if Van Amringe gave the pistol to LaMotte without any knowledge of the purpose for which LaMotte intended to use it, then the defendant would not be liable on this ground.
In Jarrett v. Trunk Co., 144 N.C. 299, it is held that if the trial judge undertakes to apply the law to the facts and gives the contention of one side, it is his duty, without being requested, (301) to give the correlative contention of the other side. But the instruction, in our opinion, is itself erroneous. 1. Because there is no evidence that Van Amringe knew or had reason to believe that LaMotte borrowed the pistol for an unlawful purpose. 2. The act of Van Amringe in lending the pistol to LaMotte was not the proximate cause of the injury to plaintiff — which was caused by a stray bullet fired from Calloway's pistol.
The accidental wounding of plaintiff did not follow in direct sequence from the act of Van Amringe, assuming for the sake of argument that the latter was guilty of negligence in lending his pistol to LaMotte.Ramsbottom v. R. R., 138 N.C. 39. In this case it is held by Mr. JusticeHoke that the proximate cause of an injury is one that produces the result in continuous sequence, without which it would not occur, and which a man of ordinary prudence could reasonably be expected to foresee.
There is, in legal parlance, no direct causal connection between the act of Van Amringe in loaning the pistol and the unforeseen accidental *Page 246 
injury to plaintiff by Calloway. Harton v. Telegraph Co., 146 N.C. 429;McGee v. R. R., 147 N.C. 142; Bowers v. R. R., 144 N.C. 684; 1 Street's Foundations, 120. To constitute liability there must not only be a breach of duty owing by the defendant to the plaintiff and injury to the latter, but the breach of duty must be the cause, and the proximate cause, of the injury. So far as the act of Van Amringe is concerned it is a case of posthoc, but not "ergo propter hoc," as was said by Manning, J., in Hudson v.McArthur, 152 N.C. 452.
In McDowall v. R. R. (1903), 2 K. B., 331, on page 337, VaughanWilliams, L. J., says: "In those cases in which a part of the cause of action was an interference of a stranger or a third person, the defendants are not held responsible unless it is found that that which they do, or omitted to do — the negligence to perform a particular duty — is itself the effective cause of the accident."
That case is instructive upon this point. It was there held that the servants of the defendant had been guilty of negligence in not properly placing the railway van, but that it having been interfered with (302) by trespassers, the negligence of the defendant's servants was not the effective cause of the accident, and the defendant was exonerated. In Burt v. Advertising Co., 154 Mass. 238, Mr. JusticeHolmes uses this language: "Wrongful acts of independent third persons, not actually intended by the defendant, are not regarded by the law as natural consequences of his wrong, and he is not bound to anticipate the general probability of such acts, any more than a particular act by this or that individual."
That proposition is illustrated in a great number of cases. Cole v.German Soc., 124 Fed., 113; Laidlaw v. Sage, 158 N.Y. 73; Leeds v. Tel.Co., 178 N.Y. 118; Clark v. R. R., 109 N.C. 430; Butts v. R. R., 110 Fed., 329; Johnson v. Association, 68 L.R.A., 499; Winfall v. Jones, 1 L.R.A. (U.S.), 201.
Upon the issue of contributory negligence the court failed to give the following requested instruction, which is assigned as error: "If the jury shall find from the evidence that Penny, the plaintiff, went out on the platform and at that time the negro had the pistol aimed towards the car where Penny was, and the danger could be as reasonably apprehended by the plaintiff as by the defendant, and the plaintiff did not turn out of his way or go back to avoid the injury, and the accident happened, he would be guilty of contributory negligence. It was the duty of the plaintiff to exercise his senses for his own protection, and if he saw the danger, or could have seen it in the exercise of the reasonable care of a prudent man and failed to do so, he would be guilty of contributory negligence, and you should answer the second issue, Yes." This is a correct proposition of law and should have been given. *Page 247 
This instruction points to particular phases of the evidence, and it was error to refuse it, although his Honor did tell the jury in very general terms that "it was plaintiff's duty to exercise his senses for his own protection.". Horne v. Power Co., 141 N.C. 50.
Recurring to the allegation of negligence, the duty which defendant owed to plaintiff is to be determined by what transpired when the train stopped at Leland and the plaintiff undertook to alight at the end of his journey. It is undoubtedly true that the conductor had (303) no power to restrain plaintiff and prevent him from leaving the train. Nevertheless, if as is charged by plaintiff, the conductor was standing on platform, when plaintiff came out of the car for the purpose of leaving, and if the conductor could then see that it was obviously dangerous for plaintiff to go down the steps at that moment, it was his duty to warn the plaintiff and apprise him of his danger.
If the conductor, having such knowledge, failed to warn plaintiff and permitted him to venture on the steps ignorantly and unwittingly in the presence of obvious danger, it would be an act of negligence upon the part of the conductor and the defendant would be liable for consequent injury.
Per contra, it is equally true, that if when plaintiff came out on the car platform, he could see for himself the "fracas" going on, it was his duty to exercise his faculties, and to act with the care of a prudent man and not venture down the steps into the midst of obvious danger. If plaintiff could see for himself the apparent danger, then he needed no warning. If then he ventured in the face of it, the consequent injury will be attributed to plaintiff's own negligence, and he can not recover.
New trial.